Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle S. Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone:     (212) 292-5390
Facsimile:     (212) 292-5391
*Attorneys for Plaintiff*
*Off-White LLC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| OFF-WHITE LLC,<br><br>*Plaintiff*<br><br>v.<br><br>9988LTD-US, CHROME ACCESSORIES FOR IPHONE, DIKHV, EVERQUEIN BOUTIQUE, FGONR\|, FOMOYUU-US(7-15 DAYS DELIVERY), KAVOUSA, MQLIFE, NICESHANGMAOX, SLCTER, UDILIS, US-ZYJS, XINSION.ELEC, YINUOSHIDIDI, ZHUOMEI-USA and ZIYUHUANGMEIGUO,<br><br>*Defendants* | **CIVIL ACTION No.**<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S *EX PARTE* APPLICATION FOR 1) A TEMPORARY RESTRAINING ORDER; 2) ORDER RESTRAINING MERCHANT STOREFRONTS AND DEFENDANTS' ASSETS WITH THE FINANCIAL INSTITUTIONS; 3) AN ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE; 4) ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE AND 5) ORDER AUTHORIZING EXPEDITED DISCOVERY**<br><br>**<u>FILED UNDER SEAL</u>** |

## I.    **TABLE OF CONTENTS**

I.    TABLE OF CONTENTS ................................................................................................ i

I.    INTRODUCTION ........................................................................................................ 1

II.   STATEMENT OF RELEVANT FACTS .................................................................... 2

III.  ARGUMENT ............................................................................................................... 3

    **A.**    **THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS** .............................................................................................. **3**

        1.    Defendants are Subject to Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1) .......................................................................... 3

        2.    Exercising Personal Jurisdiction Over Defendants Comports with Due Process ...................................................................................... 9

    **B.**    **PLAINTIFF IS ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** ................... **9**

        1.    Plaintiff is Likely to Prevail on the Merits of Its Lanham Act Claims ...................................................................................................... 11

        2.    Plaintiff is Likely to Prevail on Its State Law Claims ............................. 12

        3.    Plaintiff is Entitled to a Presumption of Irreparable Harm ...................... 12

        4.    The Balance of Hardships Favors Plaintiff ............................................... 13

        5.    Enjoining Defendants from Using the Off-White Marks Will Serve the Public Interest .................................................................................... 13

    **C.**    **PLAINTIFF IS ENTITLED TO AN ORDER 1) PREVENTING THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING DEFENDANTS' MERCHANT STOREFRONTS** ......................................... **14**

        1.    Defendants' Assets Must be Frozen ........................................................ 14

        2.    Defendants' User Accounts and Merchant Storefronts Must be Frozen ....................................................................................................... 16

    **D.**    **PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS BY ELECTRONIC MEANS** ............................................................................ **16**

        1.    Regardless of Whether the Hague Is Applicable, Alternative Service via Electronic Means Is Necessary and Proper Under the Circumstances ............................................................................................ 17

                a)    The Hague Is Inapplicable Because Certain Defendants' Addresses Are Unknown ............................................................. 17

b)    Service on Defendants Is Permissible Under Fed. R. Civ. P. 4(f)(3) ................................................................................. 22

2.    Service by Electronic Means Comports with Due Process ...................... 30

3.    Epstein Drangel's Prior Hague Service Attempts Support the Propriety of Alternative Service Under the Circumstances ..................... 31

**E.    DEFENDANTS ARE PROPERLY JOINED IN THIS ACTION PURSUANT TO FED. R. CIV. P. 20(A)(2) ................................. 33**

**F.    PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY ............................................................... 34**

**G.    PLAINTIFF'S REQUEST FOR A SECURITY BOND IN THE AMOUNT OF $5,000 IS ADEQUATE ............................................. 35**

IV.    CONCLUSION ......................................................................................... 36

<u>**TABLE OF AUTHORITIES**</u>

**Cases**

*A.I.A. Holdings, S.A. v. Lehman Bros.*, No. 97-CV-4978 (LMM), 1998 U.S. Dist. LEXIS 4175, (S.D.N.Y. April 1, 1998)........................................................................ 33

*Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14 Civ. 1112 (VSB), 2018 U.S. Dist. LEXIS 169603 (S.D.N.Y. Sep. 30, 2018)........................................ 17, 30

*Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94 Civ. 5620 (JFK), 1994 U.S. Dist. LEXIS 18457 (S.D.N.Y. Dec. 28, 1994). .................................... 35

*Aircraft Engine Lease Finance, Inc. v. Plus Ultra Lineas Aereas, S.A.*, 21 Civ. 1758, 2021 WL 6621578 (S.D.N.Y. Apr. 23, 2021)...................................................... 27

*Allstar Marketing Group, LLC v. 545756338, et al.*, 19-cv-4209-KPF (S.D.N.Y. May 9, 2019) ................................................................................................................ 6

*Allstar Marketing Group, LLC v. activate2011store, et al.*, 19-cv-4204-KPF (S.D.N.Y. May 9, 2019) ........................................................................................................ 6

*Allstar Marketing Group, LLC v. Alice Wonder Household (Shanghai) Co., Ltd.*, 19-cv-4208-KPF (S.D.N.Y. May 9, 2019) ...................................................................... 6

*Allstar Marketing Group, LLC v. Learns babyshop, et al.*, 19-cv-4211-KPF (S.D.N.Y. May 9, 2019) ........................................................................................................ 6

*Amazon.com, Inc. v. Autospeedstore*, No. C22-1183 MJP, 2023 U.S. Dist. LEXIS 6218 (W.D. Wash. Jan. 11, 2023)...................................................................................... 26

*Amazon.com, Inc. v. Li Yong*, C21-0170 (RSM) (SKV), 2023 U.S. Dist. LEXIS 72165 (W.D. Wash. Apr. 25, 2023) ............................................................................. 25, 26

*Amazon.Com, Inc. v. Pengyu Bldg. Materials*, C21-0358-JNW-SKV, 2023 U.S. Dist. LEXIS 108280 (W.D. Wash. June 22, 2023) ...................................................... 26

*Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465 (D. Mass. 2020) .............. 29

*Asia Cube Energy Holdings, LTD v. Inno Energy Tech Co.*, No. 20-cv-6203 (AJN), 2020 U.S. Dist. LEXIS 148012 (S.D.N.Y. Aug. 17, 2020) ...................................................... 26

*Audiovox Corp v. S. China Enter., Inc.*, 2012 U.S. Dist. LEXIS 104656 (S.D.N.Y. Jul. 26, 2012) ................................................................................................................ 6

*AW Licensing, LLC v. Bao*, No. 15- CV-1373, 2015 U.S. Dist. LEXIS 177101 (S.D.N.Y. Apr. 1, 2015) ................................................................................................. 1, 16

*Ayyash v. Bank Al-Madina*, 233 F.R.D. 325 (S.D.N.Y. 2005) .................................................... 35

*Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS), 2010 U.S. Dist. LEXIS 107733 (S.D.N.Y. Oct. 8, 2010) ....................................................................... 14

*Bandyopadhyay v. Defendant 1*, No. 22-cv-22907-BLOOM/Otazo-Reyes, 2022 U.S. Dist. LEXIS 212221 (S.D. Fla. Nov. 22, 2022) ............................................................. 29

*Best Van Lines, Inc. v. Walker*, 490 F.3d 239 (2d Cir. 2007) ............................................ 3, 4, 8, 9

*Best Van Lines, Inc. v. Walker*, No. 03 Civ. 6585 (GEL), 2004 U.S. Dist. LEXIS 7830 (S.D.N.Y. May 4, 2004)........................................................................................... 8

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) ..................................................... 7

*Broad. Music, Inc. v. Prana Hosp.*, Inc., 158 F. Supp. 3d 184 (S.D.N.Y. 2016) ........................ 13

*Burberry Ltd., et al., v. Burberry–Scarves.com, et al.*, No. 10 Civ. 9240 (TPG) (S.D.N.Y. Dec. 29, 2010)....................................................................................................... 19

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462 (U.S. 1985)........................................................ 9

*Calder v. Jones*, 465 U.S. 783 (1984)............................................................................ 9

*Cartier v. Seah LLC*, 598 F. Supp. 2d 422 (S.D.N.Y. 2009) ............................................ 6

*Chanel Inc. v. Cui*, No. 10 Civ. 1142 (PKC) (S.D.N.Y. May 3, 2010) ........................................ 19

*Chanel, Inc. v. Handbagstore*, No. 20-CV-62121-RUIZ/STRAUSS, 2021 WL 3060329 (S.D. Fla. June 30, 2021) ................................................................................... 28

*Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010)............................. 4, 5, 6

*Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000)............................ 4

*Dama S.P.A. v. Doe*, No. 15-cv-4528 (VM), 2015 U.S. Dist. LEXIS 178076 (S.D.N.Y. June 12, 2015)....................................................................................................... 15

*Dama S.P.A. v. Does*, No. 15 Civ. 4528 (RJS), 2015 U.S. Dist. LEXIS 178076 (S.D.N.Y. June 15, 2015)....................................................................................................... 19

*Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975 (2d Cir. 1996)........................................ 35

*Doe v. Hyassat*, 342 F.R.D. 53 (S.D.N.Y. 2022)............................................................ 29

*Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374 (S.D.N.Y. 2018) .................................... 23

*Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458 (S.D.N.Y. 2008)................... 3

*EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458(JS)(ETB),2012 U.S. Dist. LEXIS 78088 (E.D.N.Y. June 4, 2012) ................................................................. 5, 6, 7

*Equipav S.A. Pavimentação, Engenharia e Comercia Ltda. v. Bertin*, No. 22-CV-04594 (PGG), 2022 WL 2758417 (S.D.N.Y. July 14, 2022) ............................................... 26, 28

*F.T.C. v. Pecon Software Ltd.*, No. 12-cv-7186 (PAE), 2013 U.S. Dist. LEXIS 111375 (S.D.N.Y. Aug. 7, 2013) ................................................................................... 29

*Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168 (2d Cir. 2000))......................... 11

*Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368 (S.D.N.Y. 2010) ............... 12

*FoxMind Canada Enterprises Ltd. v. Abctec, et al.*, No. 21 Civ. 5146 (KPF) (S.D.N.Y. July 14, 2022) ................................................................................................................. 19, 25

*Golden Goose Deluxe Brand v. Aierbushe et al.*, No. 19-cv-2518 (VEC), 2019 U.S. Dist. LEXIS 84639 (S.D.N.Y. May 3, 2019) .............................................................. 34

*Grand v. Schwartz*, No. 15 Civ. 8779, 2016 U.S. Dist. LEXIS 61606 (S.D.N.Y. May 1, 2016) .................................................................................................................................. 5

*Grp. One Ltd. v. GTE GmbH*, 523 F. Supp. 3d 323 (E.D.N.Y. 2021) ........................................ 28

*Gucci Am. v. Bank of China*, 768 F.3d 122 (2d Cir. 2014) ........................................................ 15

*Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87 (S.D.N.Y. 2015) ..................................... 4, 16

*Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al*, No. 1:15-cv-03784 (PKC) (S.D.N.Y. June 23, 2015) ........................................................................................ 1

*Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'n Identified on Schedule A*, No. 20 C 4806, 2021 WL 1222783 (N.D. Ill. Apr. 1, 2021) ......................... 28

*Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449 (S.D.N.Y. 2000) .................... 6

*Hudson Furniture, Inc. v. Mizrahi*, No. 2022-1290, 2022 U.S. App. LEXIS 31590 (Fed. Cir. Nov. 16, 2022) .................................................................................................... 24

*Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.*, No. 17-cv-9099 (JMF) (S.D.N.Y. Nov. 21, 2017) .............................................. 1

*In re Bibox Grp. Holdings Sec. Litig.*, No. 20cv2807(DLC), 2020 WL 4586819 (S.D.N.Y. Aug. 10, 2020) ................................................................................................. 29

*In re Criminal Contempt Proceedings Against Gerald Crawford, Michael Warren*, 329 F.3d 131 (2d Cir. 2003) .................................................................................................. 31

*In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262 (S.D.N.Y. 2012) .................................. 27

*In re Vuitton et Fils, S.A.*, 606 F.2d (2d Cir. 1979) .................................................................. 1

*Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945) ................................................................... 3

*JLM Couture, Inc. v. Aimibridal, et al.*, No. 18-cv-1565-JMF (S.D.N.Y. Feb. 21, 2018) ............ 1

*Kehr v. Yamaha Motor Corp.*, No. 09-CV-7379 (CM), 596 F. Supp. 2d 821 (S.D.N.Y. 2008) .............................................................................................................................. 33

*Kelly Toys Holdings, LLC v. Top Dep't Store*, No. 22 Civ. 558 (PAE), 2022 U.S. Dist. LEXIS 154175 (S.D.N.Y. Aug. 26, 2022) ............................................................... 17, 21

*Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 1:12-cv-06283 (VSB), 2012 U.S. Dist. LEXIS 153137 (S.D.N.Y. Oct. 24, 2012) ............................................................................. 1

*Kott v. Brachport Enter. Corp.*, 45 Cal. App. 4th 1126 (Cal. Ct. App. 1996) .............................. 18

*Lechner v. Marco-Domo Intnationales Interieur GmbH*, No. 03 Civ. 5664 (JGK), 2005 U.S. Dist. LEXIS 4022 (S.D.N.Y. Mar. 10, 2005) ............................................................ 8

*Licci v. Lebanese Canadian Bank*, 732 F.3d 161 (2d Cir. 2013) ...................................................... 3

*Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 Civ. 8459 (LGS), 2016 U.S. Dist. LEXIS 89149 (S.D.N.Y. July 8, 2016) ................................................................ 5

*Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224 (2d Cir. 1992) ............................................................................................................................ 11

*Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532 (2d Cir. 2005) ............................................................................................................................ 11

*Luxottica Grp. S.p.A. v. P'ships, et al.*, 18 Civ. 2188, 2019 WL 2357011 (N.D. Ill. June 4, 2019) .................................................................................................................................. 29

*Luxottica Grp. S.p.A. v. P'ships, et al.*, 391 F. Supp. 3d 816 (N.D. Ill. 2019) ............................. 29

*MacLean—Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 08 CV 2593, 2008 WL 5100414 (N.D. Ill. Dec. 1, 2008) ........................................................................................................ 28

*Mattel, Inc. v. 86755, et al.*, No. 18-cv-8825-JSR (S.D.N.Y. Sept. 26, 2018) ............................ 35

*Mattel, Inc. v. Animefunstore, et al.*, 18 Civ. 8824 (LAP) (Dkt. 81) (S.D.N.Y. May 1, 2020) .................................................................................................................................. 31

*McGraw-Hill Global Educ. Holdings LLC v. Khan*, 323 F. Supp. 3d 488 (S.D.N.Y. 2018) ......... 6

*Milliken v. Meyer*, 311 U.S. 457 (1940) ........................................................................................ 9

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ....................................... 16, 30

*N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514 (S.D.N.Y. 2013) ............... 12

*N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305 (S.D.N.Y. 2010) ....... 13

*NBA Props. v. P'ships & Unincorporated Ass'ns*, 549 F. Supp. 3d 790 (N.D. Ill. 2021) ...... 27, 28

*North Face Apparel Corp. v. TC Fashions, Inc.*, No. 05 Civ. 9083 (RMB), 2006 U.S. Dist. LEXIS 14226 (S.D.N.Y. Mar. 30, 2006) ................................................................ 14

*Opella v. Rullan*, No. 10-21134-Civ-JORDAN/MCALILEY, 2011 U.S. Dist. LEXIS 69634 (S.D. Fla. June 29, 2011) ......................................................................................... 18

*Ouyeinc Ltd. v. Alucy*, No. 20 C 3490, 2021 WL 2633317 (N.D. Ill. June 25, 2021) ........... 28, 31

*Pearson Educ. Inc. v. Doe 1*, 18-CV-7380, 2019 WL 6498305 (S.D.N.Y. Dec. 2, 2019) ........... 30

*Philip Morris USA Inc. v. Veles Ltd.*, No. 06 Civ. 2988 (GBD), 2007 U.S. Dist. LEXIS 19780 (S.D.N.Y. Mar. 12, 2007) ......................................................................................... 22

*Polaroid Corp. v. Polarad Elecs. Corp.* 287 F.2d 492 (2d Cir. 1961) ......................................... 11

*Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, 2017 WL 11509784 (S.D.N.Y. 2020) ...................................................................................................... 28, 31

*Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, No. 17 Civ. 5553 (LGS), 2020 U.S. Dist. LEXIS 228149 (S.D.N.Y. Dec. 4, 2020) .................................... 23

*Richemont N. Am., Inc. v. Linda Lin Huang*, No. 12 Civ. 4443 (KBF), 2013 U.S. Dist. LEXIS 136790 (S.D.N.Y. Sep. 24, 2013) ......................................................................... 12

*Rio Props, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007 (9th Cir. 2002) ......................................... 30

*Rolex Watch, U.S.A., Inc. v. Pharel*, 2011 U.S. Dist. LEXIS 32249 (E.D.N.Y. Mar. 11, 2011) ............................................................................................................................ 8

*Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.*, No. 17-cv-4884-KPF (S.D.N.Y. June 28, 2017) ........................................................................ 35

*SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 WL 361739 (S.D.N.Y. Feb. 8, 2009) ........... 27

*ShelterZoom Corp. v. Goroshevsky*, 19-cv-10162 (AJN), 2020 WL 4252722 (S.D.N.Y. July 23, 2020) ......................................................................................................................... 28

*Smart Study Co. v. Acuteye-Us*, No. 21 Civ. 5860 (GHW), 2022 WL 2872297 (S.D.N.Y. July 21, 2022) .................................................................................................................. 24, 29

*Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100 (2d Cir. 2006) ................. 3

*Strabala v. Zhang*, 318 F.R.D. 81 (N.D. Ill. 2016) .............................................................. 26, 27

*Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329 (S.D.N.Y. 2015) ......... 23, 28, 29, 31

*Tevra Brands LLC v. Bayer Healthcare LLC*, No. 19 Civ. 4312, 2020 U.S. Dist. LEXIS 109919 (N.D. Cal. June 23, 2020) .................................................................................. 17

*The Neck Hammock, Inc v. Danezen.com*, 2020 WL 6364598 (D. Utah Oct. 29, 2020) ............ 29

*Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489 (S.D.N.Y. 2002) ...................... 6

*Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) ........................................................ 11

*Trs. of Columbia Univ. v. Encyclopaedia Iranica Found.*, 2020 U.S. Dist. LEXIS 155031 (S.D.N.Y. Aug. 26, 2020) .......................................................................................... 31

*United Fin. Cas. Co. v. R.U.R. Transportation, Inc.*, No. 22cv333-LL-WVG, 2022 U.S. Dist. LEXIS 202831 (S.D. Cal. Nov. 7, 2022) ............................................................... 18

*Vans, Inc., et al. v. Walmart, Inc., et al.*, 21-cv-01876 (KES) Dkt. 65 (C.D. Cal. Mar. 31, 2022) ........................................................................................................................... 13

*Viada v. Osaka Health Spa, Inc.*, No. 04-CV-2744 (VM)(KNF), 235 F.R.D. 55 (S.D.N.Y. 2006) ........................................................................................................................... 33

*Victaulic Co. v. Allied Rubber & Gasket Co.*, No. 3:17-cv-01006-BEN-JLB, 2020 U.S. Dist. LEXIS 82150 (S.D. Cal. May 8, 2020) .................................................... 23

*Vineyard House, LLC v. Constellation Brands United States Operations, Inc.*, No. 4:19-cv-01424-YGR, 2021 U.S. Dist. LEXIS 15702 (N.D. Cal. Jan. 26, 2021) .................... 13

*Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) ......................... 29

*Warner Bros. Entm't Inc. v. Doe*, No. 14-CV-3492 (KPF), 2014 U.S. Dist. LEXIS 190098 (S.D.N.Y. May 29, 2014) ....................................................................... 15

*Water Splash, Inc. v. Menon,* 137 S. Ct. 1504 (2017) ......................................... 27, 29

*WowWee Grp. Ltd. v. Haoqin*, No. 17 Civ. 9893 (WHP), 2019 U.S. Dist. LEXIS 48408 (S.D.N.Y. Mar. 22, 2019) ...................................................................... 19

*WowWee Grp. Ltd., et al. v. Meirly, et al.,* No. 18-cv-706 (AJN), 2019 U.S. Dist. LEXIS 51905 (S.D.N.Y. Mar. 27, 2019) ...................................................... 34

*Zanghi v. Ritella,* 2020 WL 589409 (S.D.N.Y. Feb. 5, 2020) ................................ 30

*Zuru (Singapore) PTE., Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, 22 Civ. 2483 (LGS), 2022 U.S. Dist. LEXIS 195268 (S.D.N.Y. Oct. 26, 2022) ............................... 23

**Statutes**

15 U.S.C. § 1057(b) ................................................................................. 11

15 U.S.C. § 1116(d)(1)(a) ......................................................................... 10

15 U.S.C. § 1117(a) ................................................................................. 14

Consolidated Appropriations Act, 2021, Pub. L. 116-260 .................................. 12

Fed. R. Civ. P. 20(a)(2) ....................................................................... 33, 34

Fed. R. Civ. P. 26(d)(1) ............................................................................ 35

Fed. R. Civ. P. 4 ................................................................................. 8, 22

Fed. R. Civ. P. 4(f)(3) .............................................................................. 27

Fed. R. Civ. P. 65(b) ................................................................................. 9

Fed. R. Civ. P. 65(b)(2) ............................................................................ 31

N.Y. C.P.L.R. § 302 .................................................................................. 3

**GLOSSARY**

| Term | Definition |
|------|-----------|
| **Plaintiff or Off-White** | Off-White LLC |
| **Defendants** | 9988LTD-US, Chrome Accessories for iPhone, DIKHV, EVERQUEIN BOUTIQUE, FGONR|, FOMOYUU-US(7-15 days delivery), Kavousa, Mqlife, niceshangmaox, SLCTER, Udilis, US-ZYJS, XINSION.Elec, yinuoshididi, ZhuoMei-USA and ziyuhuangmeiguo |
| **Amazon** | Amazon.com, a Seattle, Washington-based, online marketplace and e-commerce platform owned by Amazon.com, Inc., a Delaware corporation, that allows manufacturers and other third-party merchants, like Defendants, to advertise, distribute, offer for sale, sell and ship their retail products, which, upon information and belief, primarily originate from China, directly to consumers worldwide and specifically to consumers residing in the U.S., including New York |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 244 Madison Ave, Suite 411, New York, New York 10016 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Merchant Storefronts (as defined *infra*) and Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service and 5) an order authorizing expedited discovery |
| **Igel Dec.** | Declaration of Brian Igel in Support of Plaintiff's Application |
| **Nastasi Dec.** | Declaration of Gabriela N. Nastasi in Support of Plaintiff's Application |
| **Off-White Products** | A young, successful luxury fashion label founded by the late American creative designer Virgil Abloh, specializing in men's and women's lifestyle and high-end streetwear, as well as shoes, accessories, jewelry, homeware and other ready-made goods |
| **Off-White Marks** | U.S. Trademark Registration Nos.: 5,119,602 for "OFF WHITE" for a variety of goods in Class 25 with a constructive date of first use of January 25, 2012; 5,713,397 for "OFF-WHITE" for a variety of goods in Class 25; 5,710,328 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 9; 5,572,836 for "OFF-WHITE C/O VIRGIL ABLOH" for a variety of goods in Class 25; 5,710,287 for "OFF-WHITE C/O VIRGIL ABLOH" for a |

variety of goods in Class 14; 5,150,712 for  for a variety of goods in Class 18 and 25; 5,710,288 for for a variety of goods in Class 14; 5,307,806 for for a variety of goods in Class 18 and 25; 6,303,583 for for a variety of goods in Class 25; 5,835,552 for for a variety of goods in Class 9; 5,387,983 for for a variety of goods in Class 25; 5,445,222 for for a variety of goods in Class 25; 5,800,414 for for a variety of goods in Class 9 and 25; 5,681,805 for for a variety of goods in Class 9; 5,663,133 for for a variety of goods in Class 25; 6,054,044 for for a variety of goods in Class 25; 6,272,565 for for a variety of goods in Class 25; 6,290,768 for for a variety of goods in Class 25; 6,114,562 for for a variety of goods in Class 25;    6,131,346 for for a variety of goods in Class 18; 6,035,585 for for a variety of goods in Class 25; 6,137,880 for

for a variety of goods in Class 25; 6,505,708 for

for a variety of goods in Class 14; 6,002,434 for



for a variety of goods in Class 25; 6,126,306



for            for a variety of goods in Class 25; and



6,681,777 for            for a variety of goods in Class 25

| | |
|---|---|
| **Counterfeit Products** | Products bearing or used in connection with the Off-White Marks, and/or products in packaging and/or containing labels bearing the Off-White Marks, and/or bearing or used in connection with marks that are confusingly similar to the Off-White Marks and/or products that are identical or confusingly similar to the Off-White Products |
| **Infringing Listings** | Defendants' listings for Counterfeit Products |
| **User Accounts** | Any and all websites and any and all accounts with online marketplace platforms such as Amazon, as well as any and all as yet undiscovered accounts with additional online marketplace platforms held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Merchant Storefronts** | Any and all User Accounts through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them operate storefronts to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are held by or associated with Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| **Defendants' Assets** | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| **Defendants' Financial Accounts** | Any and all financial accounts associated with or utilized by any Defendants or any Defendants' User Accounts or Merchant Storefront(s) (whether said account is located in the U.S. or abroad) |
| **Financial Institutions** | Amazon.com, Inc., Amazon Payments, Inc. ("Amazon Pay"), PayPal Inc. ("PayPal"), Payoneer Inc. ("Payoneer") and |

| | PingPong Global Solutions, Inc. ("PingPong") |
|---|---|
| **Third Party Service Providers** | Online marketplace platforms, including, without limitation, those owned and operated, directly or indirectly, by Amazon, such as Amazon.com, as well as any and all as yet undiscovered online marketplace platforms and/or entities through which Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them manufacture, import, export, advertise, market, promote, distribute, offer for sale, sell and/or otherwise deal in Counterfeit Products which are hereinafter identified as a result of any order entered in this action, or otherwise |

## I.    **INTRODUCTION**

Pursuant to and in accordance with the Federal Rules of Civil Procedure, Plaintiff submits this memorandum of law in support of its *ex parte* Application in light of Defendants' intentional and willful offering for sale and/or sales of Counterfeit Products.[1]  Courts grant *ex parte* applications for relief in similar matters[2] and Plaintiff requests that the Court grant its Application.

Amazon is an online marketplace platform that allows manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise, offer for sale, sell, distribute and ship their wholesale and retail products originating from China directly to consumers across the world and specifically to consumers residing in the U.S., including New York. (Nastasi Dec., ¶ 3). Defendants are individuals and/or businesses, who, upon information and belief, are located in China but conduct business in the U.S. and other countries by means of their respective User Accounts and Merchant Storefronts on the Third Party Service Providers. (Igel Dec., ¶ 18; Nastasi Dec., ¶¶ 13-14). Through their Merchant Storefronts, Defendants offer for sale and/or sell consumer products, including Counterfeit Products, and market, distribute and ship such products to consumers throughout the world, including New York.  (Igel Dec., ¶¶ 18-19; Nastasi Dec., ¶¶ 3, 13-14, Ex. A). Third-party merchants, like Defendants, often use evasive tactics like aliases, false addresses and other incomplete identification information to conceal their identities and avoid detection.  (Nastasi Dec., ¶¶ 10-12).  In fact, Defendants' User Accounts and Merchant Storefronts are either devoid of any or contain incomplete or unverifiable information regarding Defendants'

---

[1] Where a defined term is referenced herein but not defined, it should be understood as it is defined in the Glossary.

[2] *See In re Vuitton et Fils, S.A.*, 606 F.2d 1 (2d Cir. 1979) (holding that *ex parte* temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief); *see also, e.g.*, *JLM Couture, Inc. v. Aimibridal, et al.*, No. 18-cv-1565-JMF, Dkt. 18 (S.D.N.Y. Feb. 21, 2018); *Ideavillage Products Corp. v. Dongguan Opete Yoga Wear Manufacturer Co., Ltd., et al.*, No. 17-cv-9099 (JMF), Dkt. 19 (S.D.N.Y. Nov. 27, 2017); *Gucci America, Inc., et al v. Alibaba Group Holding LTD, et al*, No. 1:15-cv-03784 (PKC) (S.D.N.Y. June 23, 2015); *AW Licensing, LLC v. Bao*, No. 15- CV-1373, 2015 U.S. Dist. LEXIS 177101, at *2-3 (S.D.N.Y. Apr. 1, 2015); *Klipsch Grp., Inc. v. Big Box Store Ltd.*, No. 1:12-cv-06283 (VSB), 2012 U.S. Dist. LEXIS 153137, at *3-4 (S.D.N.Y. Oct. 24, 2012).

true identities, locations and contact information, making it virtually impossible for Plaintiff to obtain independently. (Nastasi Dec., ¶¶ 10-12, 42).

Without Plaintiff's authorization or consent, Defendants were and/or currently are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to consumers located in the U.S., including New York, through their Merchant Storefronts. (Igel Dec., ¶¶ 18-19; Nastasi Dec., ¶¶ 13-14). Defendants' aforementioned actions have caused and will continue to cause irreparable harm to Plaintiff's goodwill and reputation as well as to the unassuming consumers who will continue to believe that Defendants' inferior and potentially dangerous Counterfeit Products are authorized, sponsored, approved, endorsed and/or licensed by Plaintiff, when, in fact, they are not. (Igel Dec., ¶ 22).

Plaintiff's request for *ex parte* relief is particularly necessary because if Defendants receive notice of this Lawsuit, it is highly likely that they will transfer, conceal and/or destroy 1) the Counterfeit Products, 2) the means of making or obtaining such Counterfeit Products, 3) business records and 4) any and all other evidence relating to their infringing activities. (Nastasi Dec., ¶ 10). Moreover, they will likely hide or dispose of Defendants' Assets. *Id.*  In light of the foregoing and considering that it typically takes noticed Financial Institutions and/or Third Party Service Providers a minimum of five (5) days to locate, attach and freeze Defendants' Assets and/or Defendants' Financial Accounts, Plaintiff respectfully requests that the Court order bifurcated service specifically allowing enough time for the Financial Institutions and/or Third Party Service Providers to comply with the TRO before ordering service on Defendants.

## II.    <u>STATEMENT OF RELEVANT FACTS</u>

The facts are contained in the factual declaration of Brian Igel and the attorney summarizing declaration of Gabriela N. Nastasi, plus accompanying exhibits. *See* Igel Dec.;

Nastasi Dec.; Complaint, Exs. A-C.  In the interest of brevity, any factual discussion is contained in the legal analysis below.[3]

## III.    ARGUMENT

### A.  THIS COURT HAS PERSONAL JURISDICTION OVER DEFENDANTS

Determining personal jurisdiction over a foreign defendant in a federal question case requires a two-step inquiry.  First, courts must look to the law of the forum state to determine whether personal jurisdiction will lie. *Licci v. Lebanese Canadian Bank*, 732 F.3d 161, 168 (2d Cir. 2013) (citing *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007)).  Second, if jurisdiction lies, the court then considers whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution.  *See id.*; *see also Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). As alleged herein, Defendants' unlawful counterfeiting and infringing activities subject them to long-arm jurisdiction in New York under N.Y. C.P.L.R. § 302(a)(1).[4]  Furthermore, New York's exercise of jurisdiction over Defendants thereunder comports with due process.

### 1.  Defendants are Subject to Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)

Under § 302(a)(1), there are two requirements that must be met to establish personal jurisdiction: "(1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Licci*, 732 F.3d at 168 (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC*, 450 F.3d 100, 103 (2d Cir. 2006)). In applying the test for the "transacts business" prong of § 302(a)(1), "New York decisions … tend to conflate the long-

---

[3] Although Plaintiff acknowledges that it seeks multiple forms of relief, in the interest of brevity and with respect for the Individual Rules and Practices in Civil Cases of each District Judge in the Southern District of New York, Plaintiff respectfully submits this memorandum of law in support of its Application.  Plaintiff will promptly provide supplemental briefing and/or oral argument on any issue should the Court request it.

[4] Plaintiff respectfully submits that Defendants are also subject to jurisdiction under § 302(a)(3).  *See Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 470 (S.D.N.Y. 2008).  However, this alternative analysis is omitted for brevity.  Plaintiff will provide supplemental briefing and/or oral argument on any issue upon the Court's request.

arm statutory and constitutional analyses by focusing on the constitutional standard," ergo, "a defendant need not be physically present in New York to transact business there within the meaning of [this first prong]," so long as the defendant has engaged in "purposeful activity," for example, "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Chloe v. Queen Bee of Beverly Hills*, *LLC*, 616 F.3d 158, 169-71 (2d Cir. 2010) (quoting *Best Van Lines, Inc.*, 490 F.3d at 246-247) (internal quotation marks omitted). The second prong of § 302(a)(1) requires an "articulable nexus or substantial relationship between the business transaction and the claim asserted," however, "a causal relationship between the business transaction and the claim asserted" is not required. *Gucci Am., Inc. v. Weixing Li*, 135 F. Supp. 3d 87, 93 (S.D.N.Y. 2015) (citations omitted) (internal citations omitted) (internal quotation marks omitted). Rather, it is sufficient that "the latter is not completely unmoored from the former." *Id*.

In determining whether a party has "transacted business," New York courts must look at the totality of the circumstances concerning the party's interactions with, and activities within, the state. *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 565 (S.D.N.Y. 2000). Whether the exercise of personal jurisdiction is permissible in the context of Internet activity is "directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." *Id*. Courts in this Circuit have regularly conferred personal jurisdiction on a given defendant based on that defendant's operation of a fully interactive website through which consumers can access the site from anywhere and purchase products, as is the case with Defendants' User Accounts and Merchant Storefronts, and allow for customers all over the world to communicate with Defendants and view and purchase products, including Counterfeit Products, as demonstrated by the checkout pages completed by Epstein Drangel and Epstein Drangel's

purchase of Counterfeit Products from a sampling of Defendants. *See* Nastasi Dec., ¶¶ 23-24, Ex. A; *see also Chloe*, 616 F.3d at 170.

This Circuit has exercised jurisdiction over defendants under § 302(a)(1) where such defendants regularly offer for sale and sell goods through online marketplaces, "even though Defendants do not control their [] 'storefront' or its interactivity to the same extent that they control their own highly interactive website." *Lifeguard Licensing Corp. v. Ann Arbor T-Shirt Co., LLC*, No. 15 Civ. 8459 (LGS), 2016 U.S. Dist. LEXIS 89149 *7 (S.D.N.Y. July 8, 2016) (quoting *EnviroCare Techs., LLC v. Simanovsky*, No. 11-CV-3458(JS)(ETB), 2012 U.S. Dist. LEXIS 78088 *8 (E.D.N.Y. June 4, 2012).[5] Jurisdiction is proper "for internet sellers who use an internet storefront like Amazon," when the Internet sellers are "commercial vendors who use it 'as a means for establishing regular business with a remote forum.'" *Id*. at *8. In *Lifeguard Licensing Corp.*, Judge Schofield held that a "website that does more than provide information about a product and allows customers to purchase goods online, is a 'highly interactive website,' which may provide a basis for personal jurisdiction under CPLR § 302(a)." *Id*. at *7. (citing *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 170 (2d Cir. 2010) and *Grand v. Schwartz*, No. 15 Civ. 8779, 2016 U.S. Dist. LEXIS 61606 at *3 (S.D.N.Y. May 1, 2016) (holding that interactive commercial websites provides support for jurisdiction pursuant to CPLR § 302(a)(1))). Moreover, "[r]egularly offering and selling goods via an online marketplace such as Amazon.com can provide a basis for personal jurisdiction under CPLR § 302(a), even though Defendants do not control their Amazon.com 'storefront' or its interactivity to the same extent that they control their own highly interactive website." *Id*. at *8. If a defendant

> wishes to operate an interactive website accessible in New York, there is no inequity in subjecting [that defendant] to personal jurisdiction here. If [a defendant] does not want its website to subject it to personal jurisdiction here,

---

[5] *See also supra* fn. 4.

> it is free to set up a passive website that does not enable [that defendant] to transact business in New York.

*Thomas Publ'g Co. v. Indus. Quick Search*, 237 F. Supp. 2d 489, 492 (S.D.N.Y. 2002).[6]

Further, in *EnviroCare Techs.*, the court held that "if a website is interactive and allows a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction." 2012 U.S. Dist. LEXIS 78088 at *9 (citing *Hsin Ten Enter. USA, Inc. v. Clark Enters.*, 138 F. Supp. 2d 449, 456 (S.D.N.Y. 2000) ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant.")) Similarly, in *Chloe, supra*, the Second Circuit found that while the single act of shipping a counterfeit product might be sufficient to subject him to the jurisdiction of a New York court, it did not need to delve into such an inquiry as the defendant "operated a highly interactive website offering [counterfeit products] for sale to New York consumers." *Chloe*, 616 F.3d 158, 170.

In some circumstances, courts in the Second Circuit have found that "[t]he offering for sale of even one copy of an allegedly infringing item, even if no sale results, is sufficient to give personal jurisdiction over the alleged infringer under N.Y. CPLR § 302(a), subd. 1, 2 and 3." *Cartier v. Seah LLC*, 598 F. Supp. 2d 422, 425 (S.D.N.Y. 2009). In *McGraw-Hill Global Educ. Holdings LLC v. Khan*, 323 F. Supp. 3d 488 (S.D.N.Y. 2018), this Court found personal jurisdiction where the defendant's website was "interactive" and allowed a buyer to submit an order online. *McGraw-Hill* cited to *Audiovox Corp v. S. China Enter., Inc.*, 2012 U.S. Dist. LEXIS 104656 at *3 (S.D.N.Y. Jul. 26, 2012) for the proposition that "if a website is interactive and allows

---

[6] This Court has repeatedly found personal jurisdiction over defendants based in China who are operating Merchant Storefronts on online marketplace platforms, such as Alibaba, AliExpress, Wish and eBay. *See, e.g.*, *Allstar Marketing Group, LLC v. activate2011store, et al.*, 19-cv-4204-KPF (S.D.N.Y. May 9, 2019); *Allstar Marketing Group, LLC v. Alice Wonder Household (Shanghai) Co., Ltd.*, 19-cv-4208-KPF (S.D.N.Y. May 9, 2019); *Allstar Marketing Group, LLC v. 545756338, et al.*, 19-cv-4209-KPF (S.D.N.Y. May 9, 2019); *Allstar Marketing Group, LLC v. Learns babyshop, et al.*, 19-cv-4211-KPF (S.D.N.Y. May 9, 2019).

a buyer in New York to submit an order online, courts typically find that the website operator is 'transacting business' in New York and is therefore subject to the court's jurisdiction." *See also*, *Hsin Ten Enter.*, 138 F. Supp. 2d 449, 456 ("Generally, an interactive website supports a finding of personal jurisdiction over the defendant.").

Here, Defendants operate interactive Merchant Storefronts on Amazon, allowing New York consumers to inquire and communicate with Defendants, purchase goods, including Counterfeit Products, by and through Defendants' listings, and upon completion of a sale, ship goods to New York. The fact that Defendants have chosen to open their respective User Accounts for the purpose of selling Counterfeit Products through their Merchant Storefronts alone supports a finding that Defendants have intentionally used Amazon "as a means for establishing regular business with a remote forum." *EnviroCare Techs., LLC*, 2012 U.S. Dist. LEXIS 78088 at *10 (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1019 (9th Cir. 2008)). Moreover, the fact that Defendants are offering the Counterfeit Products through their Merchant Storefronts coupled with the fact that most of their User Accounts reflect multiple sales to consumers across the world, including repeat sales to consumers in the U.S., confirms that Defendants are sophisticated sellers operating commercial businesses through Amazon, such that they are subject to jurisdiction. *Id*. at *10.

It is highly likely that Defendants have shipped Counterfeit Products to consumers in New York based on the following: 1) Epstein Drangel completed a checkout page for an order of Counterfeit Products from each and every Defendant through an account associated with the New York Address and/or provided the New York Address as the shipping address, 2) Epstein Drangel purchased Counterfeit Products from a representative sampling of Defendants to New York, 3) and all Defendants accept payment in U.S. dollars. (Nastasi Dec., ¶¶ 16, 23-24, Ex. A).

Nevertheless, whether a defendant physically shipped Counterfeit Products into New York is not determinative of whether personal jurisdiction exists, as courts in this Circuit examine a given defendant's online interactions with consumers in considering whether a particular defendant has transacted business in the forum state under § 302(a)(1). *Rolex Watch, U.S.A., Inc. v. Pharel*, 2011 U.S. Dist. LEXIS 32249, at * 6 (E.D.N.Y. Mar. 11, 2011). Plaintiff and Epstein Drangel have viewed Defendants' Counterfeit Products via their online User Accounts and Merchant Storefronts. (Igel Dec., ¶ 19; Nastasi Dec., ¶¶ 14, 16). Epstein Drangel then completed checkout pages for Counterfeit Products by providing the New York Address as the shipping address.[7] (Nastasi Dec., ¶¶ 23-24, Ex. A). Further, Epstein Drangel purchased Counterfeit Products from a representative sampling of Defendants. *Id.* Thus, Defendants' sophisticated commercial operations, specifically including their offering for sale and/or selling of Counterfeit Products through their highly interactive User Accounts and Merchant Storefronts on Amazon, Epstein Drangel's completion of checkout pages with the New York Address, Epstein Drangel's purchase of Counterfeit Products, along with Defendants' own representations on their Merchant Storefronts that they ship Counterfeit Products to the U.S., including New York, unequivocally establishes that Defendants conduct business within this District and the claims in this suit arise from Defendants' business dealings and transactions with consumers in New York.[8] *Id.*

---

[7] Under case law of the Second Circuit, when analyzing personal jurisdiction in the Internet context, "traditional statutory and constitutional principles remain the touchstone of the inquiry", and while a website's interactivity, "may be useful" for analyzing personal jurisdiction 'insofar as it helps to decide whether the defendant 'transacts any business' in New York,'" … "it does not amount to a separate framework for analyzing internet-based jurisdiction." *Best Van Lines, Inc.*, 490 F.3d at 252 (quoting *Best Van Lines, Inc. v. Walker*, No. 03 Civ. 6585 (GEL), 2004 U.S. Dist. LEXIS 7830, at *9 (S.D.N.Y. May 4, 2004) (internal citation omitted)).

[8] Plaintiff respectfully submits that the Court has jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2), which "provides for jurisdiction over a defendant if a claim arises under federal law, if the defendant is not subject to jurisdiction of the courts of general jurisdiction of any state, and if the exercise of jurisdiction is consistent with the Constitution and laws of the United States." *Lechner v. Marco-Domo Internationales Interieur GmbH*, No. 03 Civ. 5664 (JGK), 2005 U.S. Dist. LEXIS 4022, *8 (S.D.N.Y. Mar. 10, 2005).

## 2. **Exercising Personal Jurisdiction Over Defendants Comports with Due Process**

Asserting personal jurisdiction over Defendants also comports with the Due Process Clause of the U.S. Constitution, as Defendants have "certain minimum contacts … such that maintenance of th[is] suit does not offend 'traditional notions of fair play and substantial justice.'" *Calder v. Jones*, 465 U.S. 783, 788 (1984) (quoting *Milliken v. Meyer*, 311 U.S. 457 (1940)). Defendants intentionally directed activity towards the New York market, thereby purposefully availing themselves of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (U.S. 1985); *Best Van Lines, Inc.*, 490 F.3d at 243; *see also* Nastasi Dec., ¶¶ 23-24, Ex. A. Moreover, "as a practical matter, the Due Process Clause permits the exercise of jurisdiction in a broader range of circumstances of N.Y. C.P.L.R. § 302, and a foreign defendant meeting the standards of § 302 will satisfy the due process standard." *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 469 (S.D.N.Y. 2008). Accordingly, Plaintiff respectfully submits that this Court has personal jurisdiction over Defendants in this action.

## B. **PLAINTIFF IS ENTITLED TO AN *EX PARTE* TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Here, an *ex parte* order is essential to prevent immediate and irreparable injury to Plaintiff. A temporary restraining order may be granted without written or oral notice to the opposing party or that party's counsel where "it clearly appears from the specific facts shown by affidavit . . . that immediate and irreparable injury, loss or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition." Fed. R. Civ. P. 65(b). Section 34 of the Lanham Act expressly authorizes this Court to issue *ex parte* restraining orders "with respect to a violation [of the Act] that consists of using a counterfeit mark in connection with the sale, offering

for sale, or distribution of goods." 15 U.S.C. § 1116(d)(1)(a).[9]

Once a violation of the Lanham Act is demonstrated, the issuance of an *ex parte* order is appropriate upon showing that: (i) the plaintiff will provide adequate security; (ii) any order other than an *ex parte* order is not adequate to achieve the purposes of 15 U.S.C. § 1114; (iii) the plaintiff has not publicized the requested *ex parte* order; (iv) the plaintiff is likely to succeed on showing that defendants are using counterfeit marks; (v) an immediate and irreparable injury will occur if such *ex parte* order is not granted; (vi) the materials to be seized will be located at the place identified in the application; (vii) the harm to the plaintiff in denying the application outweighs the harm to defendants in granting the order and (viii) if prior notice was given, defendants would destroy, move, hide or otherwise make such matter inaccessible to the court. 15 U.S.C. § 1116(d)(4)(B). As discussed below, Plaintiff meets each of the relevant criteria for the issuance of an *ex parte* temporary restraining order under the Lanham Act.[10]

An *ex parte* temporary restraining order is particularly warranted in cases, such as the instant one, involving offshore counterfeiters who conceal their identities and engage in unlawful and harmful activities over the Internet to avoid revealing their actual locations and identities. (Nastasi Dec., ¶¶ 10-12, 42). Defendants, who, upon information and belief, are located in China and operate their businesses exclusively over the Internet, knowingly and willfully offer for sale and/or sell Counterfeit Products through their User Accounts and on their Merchant Storefronts on Amazon. (Igel Dec., ¶¶ 18-19; Nastasi Dec., ¶¶ 13-14, Ex. A). The covert nature of Defendants and their counterfeiting activities make any order other than an *ex parte* temporary restraining

---

[9] Congress' purpose for enacting such *ex parte* remedies was to ensure that courts were able to effectively exercise their jurisdiction in counterfeiting cases and to prevent counterfeiters given prior notice from disappearing or quickly disposing of infringing inventory or records relating to their counterfeiting and illegal actions. *See* Senate-House Joint Explanatory Statement on trademark Counterfeiting Legislation, 130 Cong. Rec. H12076, at 12080 (Oct. 10, 1984).

[10] Plaintiff has expressed its willingness to provide security in conjunction with the *ex parte* relief it seeks. *See* [Proposed] Order, filed herewith. Also, since Defendants' location and the location of the Counterfeit Products are unclear, Plaintiff is not requesting a seizure order in this Application. (Nastasi Dec., ¶¶ 10-12, 42).

order an exercise in futility. The immediate and irreparable harm to Plaintiff's business and reputation, as well as to the goodwill associated with the Off-White Marks, in denying its Application for an *ex parte* temporary restraining order greatly outweighs the harm to Defendants' interests in continuing to offer for sale and sell Counterfeit Products. (Igel Dec., ¶ 22).

"To obtain a preliminary injunction, a plaintiff must establish: '(1) the likelihood of irreparable injury in the absence of such an injunction, and (2) either (a) likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly' in its favor.'" *Louis Vuitton Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005) (quoting *Federal Express Corp. v. Federal Espresso, Inc.*, 201 F.3d 168, 173 (2d Cir. 2000)). The "standards which govern consideration of an application for a temporary restraining order… are the same standards as those which govern a preliminary injunction." *Local 1814, Int'l Longshoremen's Ass'n v. N.Y. Shipping Ass'n, Inc.*, 965 F.2d 1224, 1228 (2d Cir. 1992). Plaintiff meets the standard for a preliminary injunction and the Court should enter a temporary restraining order.

### 1. **Plaintiff is Likely to Prevail on the Merits of Its Lanham Act Claims**

To establish a likelihood of success on trademark counterfeiting and infringement claims, a plaintiff must show: (1) that its marks are valid and entitled to protection, and (2) that defendants' use of plaintiff's marks is likely to cause confusion. *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010). First, the U.S. trademark registration certificates submitted in conjunction with this Application provide *prima facie* evidence of both the validity of the Off-White Marks, as well as Plaintiff's ownership of the same. 15 U.S.C. § 1057(b). (Igel Dec., ¶ 9, Ex. B).

Second, a proper likelihood of confusion inquiry generally involves an analysis of the factors set forth in *Polaroid Corp. v. Polarad Elecs. Corp.* 287 F.2d 492, 495 (2d Cir. 1961). Yet, "where counterfeit marks are involved, it is not necessary to conduct the step-by-step examination

of each *Polaroid* factor because counterfeit marks are inherently confusing." *Fendi Adele S.R.L. v. Filene's Basement, Inc.*, 696 F. Supp. 2d 368, 383 (S.D.N.Y. 2010) (internal citations omitted). Instead, "[t]he court need only determine the more fundamental question of whether there are items to be confused in the first place -- that is, whether the items at issue . . . are, in fact, counterfeit and whether [d]efendants sold those items, or offered those items for sale." *Id.* at 383 (internal citations omitted). Regardless, even if a *Polaroid* analysis were necessary, a straightforward application of the test demonstrates that likelihood of confusion exists in this case.

Because Plaintiff has shown that it is likely to prevail on its trademark counterfeiting and infringement claims, it has also shown that it likely will prevail on its claims for false designation of origin, passing off and unfair competition. *Richemont N. Am., Inc. v. Linda Lin Huang*, No. 12 Civ. 4443 (KBF), 2013 U.S. Dist. LEXIS 136790, at *14-16 n.15 (S.D.N.Y. Sep. 24, 2013).

### 2.  Plaintiff is Likely to Prevail on Its State Law Claims

Since Plaintiff has shown a likelihood of success on its Lanham Act claims, Plaintiff has also shown a likelihood of success on its New York unfair competition and unjust enrichment claims. *N. Am. Olive Oil Ass'n v. Kangadis Food Inc.*, 962 F. Supp. 2d 514, 521 (S.D.N.Y. 2013).

### 3.  Plaintiff is Entitled to a Presumption of Irreparable Harm

Plaintiff is entitled to a rebuttable presumption of irreparable harm as it is likely to succeed on the merits of its Lanham Act claims. On December 27, 2020, the Trademark Modernization Act of 2020 (codified as part of the Consolidated Appropriations Act, 2021, Pub. L. 116-260) was signed into law. The Act, *inter alia*, amended the text of 15 U.S.C. § 1116(a) codified a rebuttable presumption of irreparable harm which, as amended, now reads in relevant part:

> *A plaintiff seeking any such injunction shall be entitled to a rebuttable presumption of irreparable harm upon a finding of a violation identified in this subsection in the case of a motion for a permanent injunction or upon a finding of likelihood of success on the merits for a violation identified in this subsection in the case of a motion for a preliminary injunction or temporary restraining order.*

*See City of N.Y. v. Lopez*, No. 21 CV 7862 (JPO), 2021 U.S. Dist. LEXIS 243449 (S.D.N.Y. Dec. 21, 2021) (emphasis added); *Vans, Inc., et al. v. Walmart, Inc., et al.*, 21-cv-01876 (KES) Dkt. 65, *23 (C.D. Cal. Mar. 31, 2022). Accordingly, since Plaintiff has established that it is likely to succeed on the merits of its claims under 15 U.S.C. § 1125(a), Plaintiff is entitled to a presumption of irreparable harm.

### 4.  The Balance of Hardships Favors Plaintiff

The balance of hardships unquestionably and overwhelmingly favors Plaintiff.  Here, as described above, Plaintiff has suffered, and will continue to suffer, irreparable harm to its business, the value, goodwill and reputation built up in and associated with the Off-White Marks and to its reputation as a result of Defendants' willful and knowing sales of substandard Counterfeit Products. (Igel Dec., ¶ 22). Any harm to Defendants would only be the loss of Defendants' ability to continue to offer their Counterfeit Products for sale, or, in other words, the loss of the benefit of being allowed to continue to unfairly profit from their illegal and infringing activities.  "Indeed, to the extent defendants 'elect[] to build a business on products found to infringe[,] [they] cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Broad. Music, Inc. v. Prana Hosp.*, Inc., 158 F. Supp. 3d 184, 196 (S.D.N.Y. 2016) (internal citation omitted).

### 5.  Enjoining Defendants from Using the Off-White Marks Will Serve the Public Interest

The public interest will be served by the issuance of a temporary restraining order and preliminary injunction, as "the public has an interest in not being deceived—in being assured that the mark it associates with a product is not attached to goods of unknown origin and quality." *N.Y.C. Triathlon, LLC v. NYC Triathlon Club, Inc.*, 704 F. Supp. 2d 305, 344 (S.D.N.Y. 2010). Here, the public has an interest in being able to rely on the high quality of Off-White Products. (Igel Dec., ¶¶ 12, 14, 22). Since Defendants have willfully and knowingly inserted substandard

Counterfeit Products into the marketplace, the public would benefit from a temporary restraining order and preliminary injunction halting any further sale and distribution of Counterfeit Products.

## C. PLAINTIFF IS ENTITLED TO AN ORDER 1) PREVENTING THE FRAUDULENT TRANSFER OF ASSETS AND 2) FREEZING DEFENDANTS' MERCHANT STOREFRONTS

### 1. Defendants' Assets Must be Frozen

Considering the nature of Defendants' counterfeiting businesses, and Plaintiff's showing that it has a high likelihood of succeeding on the merits of all of its claims, Plaintiff will be entitled to an equitable accounting of Defendants' profits from their sales of Counterfeit Products. Plaintiff's request for an asset freeze order granting Plaintiff information regarding the location of Defendants' Assets, the attachment of Defendants' Assets and an injunction preventing the transfer from or to Defendants' Financial Accounts by the Financial Institutions and Third-Party Service Providers is both necessary and appropriate, and is within this Court's discretion to preserve Plaintiff's right to the relief sought in the Complaint. *See* 15 U.S.C. § 1117(a).[11]

District courts have "authority to freeze those assets which could [be] used to satisfy an equitable award of profits." *North Face Apparel Corp. v. TC Fashions, Inc.*, No. 05 Civ. 9083 (RMB), 2006 U.S. Dist. LEXIS 14226, at *10 (S.D.N.Y. Mar. 30, 2006) (internal citation omitted). In doing so, a court "may exempt any particular assets from the freeze on the ground that they [are] not linked to the profits of allegedly illegal activity." *Id.* at *11. The onus is on "the party seeking relief [from any such asset freeze] to 'present documentary proof'" that its profits aren't from such illegal activity. *Id.*

Under 15 U.S.C. § 1117(a) and 17 U.S.C. § 504(b), a plaintiff in an action arising thereunder is entitled to recover a defendant's profits derived from the counterfeiting and/or

---

[11] *See also*, *e.g.*, *Balenciaga Am., Inc. v. Dollinger*, No. 10 Civ. 2912 (LTS), 2010 U.S. Dist. LEXIS 107733, at *22 (S.D.N.Y. Oct. 8, 2010).

infringement and/or plaintiff's damages. *See Gucci Am. v. Bank of China*, 768 F.3d 122, 131-132 (2d Cir. 2014) (A copyright and/or trademark "infringer is required in equity to account for and yield up his gains to the true owner," and "profits are then allowed as an equitable measure of compensation."). Specifically, with respect to claims involving the infringement of federally registered copyrighted works and/or those arising under the Lanham Act, it has been established in this Circuit, as well as sister circuits, that district courts have the authority to issue a prejudgment asset restraint injunction in favor of plaintiffs seeking an accounting and/or another equitable remedy against allegedly infringing defendants. *Warner Bros. Entm't Inc. v. Doe,* No. 14-CV-3492 (KPF), 2014 U.S. Dist. LEXIS 190098 (S.D.N.Y. May 29, 2014).

An asset freeze in the instant matter is unquestionably warranted because Defendants, who are foreign individuals and/or entities based in China, are manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale and/or selling Counterfeit Products to U.S. consumers solely via the Internet, and accepting payment for such Counterfeit Products in U.S. Dollars through Financial Institutions, thereby causing irreparable harm to Plaintiff in the form of lost sales, loss of goodwill and loss of control of its reputation with licensees, retailers and consumers, and can, and most certainly have the incentive to, transfer and hide their ill-gotten funds if their assets are not frozen. *See* Igel Dec., ¶ 22; *see also Dama S.P.A. v. Doe*, No. 15-cv-4528 (VM), 2015 U.S. Dist. LEXIS 178076, at *4-6 (S.D.N.Y. June 12, 2015).[12] Therefore, Plaintiff respectfully submits that this Court should exercise its inherent equitable power and freeze Defendants' Assets and Defendants' Financial Accounts for the purpose of

---

[12] *See also supra* fn. 2.

preserving Defendants' funds and ensuring that a meaningful accounting of their profits can be made.[13]

### 2.  Defendants' User Accounts and Merchant Storefronts Must be Frozen

A temporary restraining order which, in part, restrains the Third Party Service Providers from providing services to Defendants' User Accounts and Merchant Storefronts is warranted and necessary because the continued offering for sale and/or sale of the Counterfeit Products by Defendants on their Merchant Storefronts will result in immediate and irreparable injury to Plaintiff. *Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 126 (2d Cir. 2014); *AW Licensing, LLC v. Bao*, No. 15-CV-1373, 2015 U.S. Dist. LEXIS 177101, at *3 (S.D.N.Y. Apr. 1, 2015).

### D.  PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING BIFURCATED AND ALTERNATIVE SERVICE OF PROCESS BY ELECTRONIC MEANS

Plaintiff respectfully requests that this Court issue an order granting it permission to serve each Defendant via the following combination of electronic methods: 1) registered electronic mail and 2) website publication. For service by registered electronic mail, Plaintiff proposes using Outlook.com as well as Rmail (www.rmail.com), an online service that confirms valid proof of authorship, content, and delivery of an email, as well as the official time and date that the email was sent and received. (Nastasi Dec., ¶ 49). Along with service via email, Plaintiff respectfully requests that the Court, in its discretion, permit service via website publication.[14]

Plaintiff submits that its requested methods of alternative service are warranted herein based, not only in statutory authority, but also the practical facts and circumstances surrounding this case. Third-party merchants on Amazon, like Defendants, have been known to use aliases,

---

[13] Upon the entering of an asset freeze, Plaintiff also requests that the Court Order Defendants and/or the Financial Institutions and/or the Third-Party Service Providers to immediately identify Defendants' Assets and Defendants' Financial Accounts and the respective current account or fund balances of the same.

[14] Publication on a website has been deemed appropriate service under Fed. R. Civ. P (4)(3) "so long as the proposed publication is 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *National Association for Stock Car Auto Racing, Inc. v. Does*, 584 F. Supp. 2d 824, 826 (W.D.N.C. 2008) (quoting *Mullane*, 339 U.S. at 315-16).

false addresses and other incomplete identification information to shield their true identities. It is, however, imperative for every Defendant to have a current and operational e-mail address to operate their Merchant Storefronts and conduct their businesses. (Nastasi Dec., ¶ 47). Further, Epstein Drangel's Beijing office recently called the Chinese Ministry of Justice to inquire about the current processing time for service under the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague") and were informed that currently, the average service time is approximately six (6) months. *Id.* ¶ 37. In Epstein Drangel's recent experience, however, service often takes much longer, and runs a high risk of being largely unsuccessful. *Id.* ¶¶ 38-41. It is further worth mentioning that Covid-19 has caused most businesses to either close their offices and/or work remotely, which has further delayed service via the Hague.[15] *Id.* ¶ 44.

### 1. Regardless of Whether the Hague Is Applicable, Alternative Service via Electronic Means Is Necessary and Proper Under the Circumstances

#### a) *The Hague Is Inapplicable Because Certain Defendants' Addresses Are Unknown*

As an initial matter, although not outcome determinative, Plaintiff respectfully submits that the Hague is not applicable to all Defendants in this action. Pursuant to the plain language of Article 1 of the Hague, "[t]his Convention shall not apply where the address of the person to be served with the document is not known." *See* Hague, Art. 1; *see also Advanced Access Content Sys. Licensing Adm'r, LLC v. Shen*, No. 14 Civ. 1112 (VSB), 2018 U.S. Dist. LEXIS 169603, at *7 (S.D.N.Y. Sep. 30, 2018) and *Kelly Toys Holdings, LLC v. Top Dep't Store*, No. 22 Civ. 558 (PAE), 2022 U.S. Dist. LEXIS 154175, at *17 (S.D.N.Y. Aug. 26, 2022) (collecting cases). "Courts in this Circuit have found an address is 'not known' if the plaintiff exercised reasonable

---

[15] *See Tevra Brands LLC v. Bayer Healthcare LLC*, No. 19 Civ. 4312, 2020 U.S. Dist. LEXIS 109919, at *5 (N.D. Cal. June 23, 2020) (delays to service via the Hague "may arise due to COVID-19 pandemic....").

diligence in attempting to discover a physical address for service of process and was unsuccessful in doing so." *Id.* at \*19-21 (quoting *Advanced Access*, 2018 U.S. Dist. LEXIS 169603, at \*7-8 (S.D.N.Y. Sep. 30, 2018).  However, the use of a "reasonable diligence" standard in connection with the determination of whether an address is "not known" pursuant to the Hague seems to have originated from a singular California state appellate division case. *See Opella v. Rullan*, No. 10-21134-Civ-JORDAN/MCALILEY, 2011 U.S. Dist. LEXIS 69634, at \*14-15 (S.D. Fla. June 29, 2011) (quoting *Kott v. Brachport Enter. Corp.*, 45 Cal. App. 4th 1126, 1137-39 (Cal. Ct. App. 1996) ("*Kott*") ("I am aware of no binding precedent that establishes a standard for determining when a plaintiff 'knew' the address of the person to be served, in the context of the exemption in Article 1 of the Hague Service Convention. However, I am persuaded by the reasoning and standard expressed by a California appellate court in [*Kott*], and choose to apply it here: an address is not 'known' within Article I of the Convention only when it is unknown to the plaintiff after the plaintiff exercised reasonable diligence in attempting to discover that address.")).  The *Kott* court held that "reasonable diligence" "denotes a thorough, systematic investigation and inquiry conducted in good faith by the party or his agent or attorney." *United Fin. Cas. Co. v. R.U.R. Transportation, Inc.*, No. 22cv333-LL-WVG, 2022 U.S. Dist. LEXIS 202831, at \*4-5 (S.D. Cal. Nov. 7, 2022) (quoting *Kott*) (citations omitted)). "To satisfy the reasonable diligence standard, it is generally sufficient [] for a plaintiff to show: '[a] number of honest attempts to learn defendant's whereabouts or his address by inquiry of relatives, friends, and acquaintances, or of his employer, and by investigation of appropriate city and telephone directories, the voters' register, and the real and personal property index in the assessor's office, near the defendant's last known location[.]'" *Id.*

Some courts throughout the country, including in this District, have completely ignored

and/or chosen not to apply the "reasonable diligence" standard and have held that a defendant's address is unknown simply by acknowledging the impossibility of serving foreign defendants without reliable physical addresses.  For example, in *Dama S.P.A. v. Does*, No. 15 Civ. 4528 (RJS), 2015 U.S. Dist. LEXIS 178076 (S.D.N.Y. June 15, 2015), Judge Sullivan granted the plaintiff's request to serve online infringers based in China via email, agreeing with the plaintiff's argument that because the defendants used false names and addresses, electronic service was the only viable option. *Id.* (citing *Burberry Ltd., et al., v. Burberry–Scarves.com, et al.*, No. 10 Civ. 9240 (TPG), at Dkt. No. 10 (S.D.N.Y. Dec. 29, 2010) and *Chanel Inc. v. Cui*, No. 10 Civ. 1142 (PKC), at Doc. No. 11 (S.D.N.Y. May 3, 2010)).  In 2019, in *WowWee Grp. Ltd. v. Haoqin*, No. 17 Civ. 9893 (WHP), 2019 U.S. Dist. LEXIS 48408 (S.D.N.Y. Mar. 22, 2019) ("*WowWee Grp.*"), Judge Pauley expressly held that service by plaintiff on anonymous merchants on Wish, who were selling counterfeit goods largely out of China was appropriate. *WowWee Grp.*, 2019 U.S. Dist. LEXIS 48408, at *2.  In reaching his decision, Judge Pauley stressed that because the defendants were e-commerce sellers that consist of usernames and corresponding email addresses, there was a "practical inability to reach such elusive Defendants by traditional methods" that justified the Court's authorization of service via electronic means. *Id.*  More recently, in *FoxMind Canada Enterprises Ltd. v. Abctec, et al.*, No. 21 Civ. 5146 (KPF) (S.D.N.Y. July 14, 2022), Judge Failla chose to apply the reasonable diligence standard, and found that under the circumstances of that case, which, like here, "include a suit against a voluminous number of defendants operating online storefronts, a significant portion of whom posted demonstrably incurred address information in a space where false information is known to abound", the plaintiff, who engaged in similar investigative efforts as Plaintiff, had exercised reasonable diligence. Transcript of July 14, 2022 Telephone Conference, 19:8-19:12, a copy of which is attached to the Nastasi Dec. as Exhibit C.

In holding as such, Judge Failla noted that "[t]he Court does not believe that the law compels plaintiff to attempt to effectuate service under the Hague Convention using address information that it has a reasoned basis to believe [] [is] faulty." *Id.* at 18:6-18:10.

Here, as detailed in the Nastasi Dec., to the extent the reasonable diligence standard applies, Plaintiff, through its counsel, has made sufficient efforts to discover the physical addresses of Defendants in this action. During Epstein Drangel's investigation, it compiled a list of Defendants' addresses as displayed on Defendants' Merchant Storefronts. (Nastasi Dec. at ¶ 26). Epstein Drangel sent the list of Defendants' addresses to Epstein Drangel's Beijing office, which performed this investigation via three (3) Chinese search engines for providing company registration information.[16] *Id.* at ¶¶ 27-30. Further, Epstein Drangel's Bejing office attempted to retrieve phone numbers associated with the addresses. *Id.* at ¶ 31. For any Defendants which Epstein Drangel's Beijing office determined it had potentially accurate addresses for, in an effort to test the veracity of such addresses, Epstein Drangel's Beijing office mailed test documents via Yunda Express ("Test Mailings") to the respective Defendants to attempt, as discussed below. *Id.* at ¶¶ 33-34. From this search, Epstein Drangel's Beijing office was able to confirm that of the sixteen (16) Defendants in this action, five (5) Defendants display addresses that cannot be connected to the respective Defendants in any way, and Epstein Drangel's Beijing office was unable to independently locate any additional addresses for these Defendants,[17] three (3) Defendants display addresses that appear to be accurate, but ultimately do not have enough identifying information to send Test Mailings to the addresses;[18] five (5) Defendants display

---

[16] Epstein Drangel's Beijing office used baidu.com, QiChaCha, i.e. qcc.com and the National Enterprise Credit Information Publicity System (https://www.gsxt.gov.cn/index.html) to investigate Defendants' displayed addresses.

[17] The following five (5) Defendants display addresses that cannot be connected to the respective Defendants in any way: Chrome Accessories for iPhone, FGONR|, FOMOYUU-US(7-15 days delivery), niceshangmaox and yinuoshididi.

[18] The following three (3) Defendants display addresses that appear to be accurate, but ultimately do not have enough identifying information to send test documents to the Defendants: 9988LTD-US, US-ZYJS and ziyuhuangmeiguo.

addresses that appear to be accurate and had enough additional identifying information to send

Test Mailings to the addresses (i.e., a phone number connected to the addresses), all of which were

successfully delivered;[19] and three (3) Defendants display addresses that appear to be accurate and

had enough additional identifying information to send Test Mailings to the addresses (i.e., a phone

number connected to the addresses), all of which were unsuccessfully delivered.[20] *Id*. at ¶ 35.

However, even sending and/or successfully delivering Test Mailings does not guarantee with any

certainty that the person and/or entity who may have received the mail service is the Defendant

given the motivation and propensity for counterfeiters, like Defendants, to conceal their true

identities and whereabouts. *Id*. at ¶¶ 10-12, 36, 42. Plaintiff's inability to successfully send and/or

deliver Test Mailings many of the Defendants' addresses via Yunda Express, and inability to

confirm with certainty whether, for those Test Mailings that were successfully delivered, the

intended recipient even received the Test Mailings, shows that if Plaintiff attempts service via the

Hague, it will likely be largely unsuccessful.

Accordingly, despite Plaintiff's reasonable diligence in attempting to confirm the accuracy

of Defendants' physical addresses, Plaintiff's counsel was unable to locate true and correct and/or

testable addresses for at minimum eleven (11) of the Defendants, and regardless cannot confirm

with any certainty that the five (5) addresses it was able to send test documents to are the locations

of the correct person or entity to be served given the motivation and propensity for counterfeiters,

like Defendants, to conceal their true identities and whereabouts. *See, e.g., Kelly Toys Holdings*,

2022 U.S. Dist. LEXIS 154175, at *21 (holding plaintiff was not required to hire a private

---

[19] The following five (5) Defendants had slightly more identifying information, i.e., enough to successfully send Test
Mailings to, but ultimately, not enough identifying information to be certain the respective Defendants reside at the
addresses: DIKHV, EVERQUEIN BOUTIQUE, Kavousa, Mqlife and XINSION.Elec.

[20] The following three (3) Defendants had slightly more identifying information, i.e., enough to attempt to send Test
Mailings to (which were all unsuccessfully delivered), but ultimately, not enough identifying information to be certain
the respective Defendants reside at the addresses: SLCTER, Udilis and ZhuoMei-USA.

investigator in China to verify whether a physical address associated with a domain name is in fact authentic and that the extensive and multi-dimensional efforts taken established plaintiff exercised reasonable diligence in attempting to discover a physical address for service of process) (internal citations omitted); *Philip Morris USA Inc. v. Veles Ltd.*, No. 06 Civ. 2988 (GBD), 2007 U.S. Dist. LEXIS 19780, at *1, *3 (S.D.N.Y. Mar. 12, 2007) (approving service of online retailers by email and fax, where service by mail to listed physical addresses had been attempted but was returned, and where email addresses and fax numbers appeared operational); *Advanced Access*, 2018 U.S. Dist. LEXIS 169603, at *4 (finding efforts reasonably diligent, and approving service by email, where plaintiff "investigat[ed]" the physical addresses associated with Chinese online retailer's domain names, searched the internet, "called known phone numbers, and conducted in-person visits where reasonable"); *Prediction Co. v. Rajgarhia*, No. 09 Civ. 7459 (SAS), 2010 U.S. Dist. LEXIS 26536, at *2 (S.D.N.Y. Mar. 22, 2010) (finding plaintiff's address was "not known," and that the Hague Convention was thus inapplicable, where plaintiff had "actively, though unsuccessfully, attempted to obtain [Indian defendant's] address in a variety of ways").

**b)** *Service on Defendants Is Permissible Under Fed. R. Civ. P. 4(f)(3)*

Regardless of the applicability of the Hague, Plaintiff respectfully submits that alternative service is proper.  Plaintiff acknowledges that both the U.S. and China are signatories to the Hague; however, Plaintiff respectfully submits that alternative service pursuant to Fed. R. Civ. P. 4(f)(3) is particularly appropriate here based on the exigent circumstances surrounding Plaintiff's Application. *Celgard, LLC v. Shenzen Senior Tech. Material Co.*, No. 3:20-cv-130-GCM, 2020 U.S. Dist. LEXIS 89487, at *8-9 (W.D.N.C. May 20, 2020) (Plaintiffs may request service via email in cases of emergency per the Hague).  Rule 4(f)(3) allows service *by other means* than those internationally agreed upon, so long as they are not specifically prohibited by international agreement.  *Id.* Thus, under Rule 4(f)(3), Plaintiff may request service via email—which, as

addressed in further detail below, is not prohibited by the Hague or otherwise—regardless of whether the Hague is applicable.

By its terms, the decision whether to authorize alternative service under Rule 4(f)(3) is left to the Court's discretion. *See Elsevier, Inc. v. Siew Yee Chew*, 287 F. Supp. 3d 374, 377 (S.D.N.Y. 2018) "Where service may be authorized by Rule 4(f)(3), Plaintiff need not attempt, and courts need not give preference to, means of service under Rule 4(f)(1) or 4(f)(2). *Zuru (Singapore) PTE., Ltd. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Ass'ns Identified on Schedule A Hereto*, 22 Civ. 2483 (LGS), 2022 U.S. Dist. LEXIS 195268, at *2 (S.D.N.Y. Oct. 26, 2022) (citing *Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, No. 17 Civ. 5553 (LGS), 2020 U.S. Dist. LEXIS 228149, at *4 (S.D.N.Y. Dec. 4, 2020) (noting that "Rule 4(f) is not hierarchical" and service may be authorized under Rule 4(f)(3) "even if the method of service is in contravention of the laws of the foreign country" and thus precluded under 4(f)(2)); *see also Sulzer Mixpac AG v. Medenstar Indus. Co.*, 312 F.R.D. 329, 330 (S.D.N.Y. 2015) ("[s]ervice under subsection [4(f)] (3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant."). Although compliance with the Hague is required when it is applicable, and as such, a court is "'prohibited from issuing a Rule 4(f)(3) order in contravention of ... the Hague'. . .the Ninth Circuit [among other circuits, as noted herein] has rejected the contention that Rule 4(f)(3) can only be utilized if other methods of service have failed or been shown to be unduly burdensome." *Victaulic Co. v. Allied Rubber & Gasket Co.*, No. 3:17-cv-01006-BEN-JLB, 2020 U.S. Dist. LEXIS 82150, at *6-7 (S.D. Cal. May 8, 2020) (citing *Rio Properties, Inc.*, 284 F.3d at 1016). In finding alternative service was proper on Chinese defendants, the Fifth Circuit recently confirmed, even where the Hague does apply, "[s]ervice pursuant to the Hague Convention listed in subjection (f)(1), does not displace

subsection (f)(3), which permits service by other means." *Viahart, L.L.C. v. GangPeng*, No. 21-40166, 2022 WL 445161, at *3 (5th Cir. Feb. 14, 2022).  Most recently, the Federal Circuit, on appeal from the District Court similarly found that no blanket requirement exists to attempt service by conventional means before alternative service is permitted. *Hudson Furniture, Inc. v. Mizrahi*, No. 2022-1290, 2022 U.S. App. LEXIS 31590, at *6-7 (Fed. Cir. Nov. 16, 2022).

### 1) <u>The Exigent Circumstances Present Here Justify Alternative Service</u>

Plaintiff respectfully submits that the exigencies present here justify service via alternative means. First, the plain language of Article 15 of the Hague states, "[n]otwithstanding the provisions of the preceding paragraphs the judge may order, in case of urgency, any provisional or protective measures." Hague, Art. 15; *see also Genus Lifesciences Inc. v. Tapaysa Eng'g Works Pvt. Ltd.,* No. 20-CV-3865, 2021 U.S. Dist. LEXIS 76291, at *9 (E.D. Pa. Mar. 10, 2021).  Second, the Advisory Committee notes to Fed. R. Civ. P. 4 specifically contemplate Rule 4(f)(3)'s use as an alternative to compliance with the Hague.[21]  The 1993 Advisory Committee Notes to Fed. R. Civ. P. 4 state, in relevant part, the following:

> The Hague Convention, for example, authorizes special forms of service "in cases of urgency if convention methods will not permit service within the time required by the circumstances. Other circumstances that might justify the use of additional methods include the failure of the foreign country's Central Authority to effect service within the six-month period provided by the Convention . . . . In such cases, the court may direct a special method of service not explicitly authorized by international agreement if not prohibited by the agreement. Inasmuch as our Constitution requires that reasonable notice be given, an earnest effort should be made to devise a method of communication that is consistent with due process and

---

[21]  Plaintiff respectfully submits that the Court's conclusion in *Smart Study Co. v. Acuteye-Us*, No. 21 Civ. 5860 (GHW), 2022 WL 2872297 (S.D.N.Y. July 21, 2022) (hereinafter "*Smart Study*"), that "the Court need not determine whether the request was truly urgent because it does not matter. There is no exigent circumstances exception in Rule 4(f)(3)" (*Smart Study*, 2022 WL 2872297 at *27) is directly belied by the 1993 Advisory Committee noted to Fed. R. Civ. P. 4.  Additionally, Plaintiff submits that the Court's conclusion in *Smart Study*'s finding service by email on Chinese defendants does not comply with Fed. R. Civ. P. 4 or the Hague Convention is so broad as to prevent an American plaintiff from being able to sue and effectively serve a Chinese defendant in numerous circumstances, particularly Chinese defendants like the counterfeiters in this case, having the motivation and propensity to conceal their identities and locations and/or display false information regarding their identities and whereabouts.

minimizes offense to foreign law.

Fed. R. Civ. P. 4, Advisory Committee Notes, 1993 amendments.[22]    In line with the Advisory

Committee notes, recently, in an opinion read on the record in *FoxMind Canada Enterprises*, Judge

Failla found that the exigencies existing in that particular case counseled in favor of alternative

service.    Judge Failla held as follows:

> Here the Court concludes that alternative service was necessary on the
> circumstances of this case.    Although plaintiff did not attempt to serve the moving
> defendants before seeking alternative service, the Court has already explained that
> plaintiff harbored reasonable doubts about the veracity of the addresses affiliated
> with their Amazon user accounts.    The Court, therefore, does not believe it
> appropriate to institute a requirement that plaintiff attempt service under the Hague
> Convention using information that it had reason to believe was erroneous. . .Beyond
> the questionable authenticity of these addresses, there were also the exigencies of
> the case, which counsel, in favor of alternative service, plaintiff initiated this suit
> on an emergency posture picking an ex parte TRO in the hopes of immediately
> thwarting the sale of allegedly counterfeit goods on online marketplaces.    Any other
> strategy for instituting this action would have afforded the alleged counterfeiters an
> opportunity to evade enforcement of the trademark laws, thus obviating the release
> sought by plaintiff before the Court and before this Court had…a chance…to
> consider the merits of the claims.

Transcript of July 14, 2022 Telephone Conference, 21:11-22:10, Nastasi Dec. as Exhibit C. Judge

Failla's findings in *FoxMind* were recently confirmed in recent lawsuits brought by Amazon

against sellers on its platform. *See, e.g. Amazon.com, Inc. v. Li Yong*, C21-0170 (RSM) (SKV),

2023 U.S. Dist. LEXIS 72165 (W.D. Wash. Apr. 25, 2023) ("*Li Yong*") In *Li Yong*, Amazon sought

an order authorizing alternative service of process by email on a China-based defendant arguing

that Amazon "discovered through investigation that Defendant[] had provided invalid addresses

in connection with [its user accounts], including, for example, addresses for vacant buildings,

unrelated businesses and nonexistent locations" and the document production from the third party

---

[22] The Supreme Court in *Water Splash*, noted that where an ambiguity in a treaty exists, "[t]hree extratextual sources
are especially helpful…the Convention's drafting history, the views of the Executive, and the views of other
signatories." *Water Splash*, 137 S. Ct. at 1511.

service provider Payoneer also included falsified addresses or addresses of businesses unrelated to the defendant. *Amazon.com*, 2023 U.S. Dist. LEXIS 72165 at *2-4. *See also*, *Amazon.com, Inc. v. Autospeedstore*, No. C22-1183 MJP, 2023 U.S. Dist. LEXIS 6218, at *1-3 (W.D. Wash. Jan. 11, 2023) (Amazon sought leave to serve third-party subpoenas to identify the many defendants named in the action, because "[d]espite a purportedly 'robust seller verification process,'" Amazon failed to verify the sellers on its platform and discovered that defendants provided false addresses or addresses that had no connection to the seller accounts.); *Amazon.Com, Inc. v. Pengyu Bldg. Materials*, C21-0358-JNW-SKV, 2023 U.S. Dist. LEXIS 108280 (W.D. Wash. June 22, 2023) (Amazon filed an *ex parte* motion for alternative service where the addresses associated with two of the defendants' Amazon and Payoneer accounts were found to be false). Hence, Amazon is admittedly incapable of determining true and correct physical addresses for the sellers on its platform.

Several federal district courts have likewise held that alternative service is appropriate where, as here, Plaintiff has demonstrated exigent circumstances justifying the urgent injunctive relief sought herein, making a quick and effective means of service necessary to prevent further irreparable harm to Plaintiff. *See e.g., Equipav S.A. Pavimentação, Engenharia e Comercia Ltda. v. Bertin*, No. 22-CV-04594 (PGG), 2022 WL 2758417, at *5 (S.D.N.Y. July 14, 2022) ("As to whether this Court's intervention is necessary, courts in this District have found that lengthy delays in service under the Hague Convention are sufficient to show that alternative service under Rule 4(f)(3) is warranted." (citing cases)); *Asia Cube Energy Holdings, LTD v. Inno Energy Tech Co.*, No. 20-cv-6203 (AJN), 2020 U.S. Dist. LEXIS 148012, at *10 (S.D.N.Y. Aug. 17, 2020) ("[Plaintiff's] pursuit of emergency relief bears on the question of whether judicial approval of alternative means of service is warranted"); *Strabala v. Zhang*, 318 F.R.D. 81, 114 (N.D. Ill. 2016)

("Court-directed service pursuant to Rule 4(f)(3) is appropriate when, for example, 'there is a need for speed that cannot be met by following the Hague Convention methods. . . .'") (internal quotation omitted); *Aircraft Engine Lease Finance, Inc. v. Plus Ultra Lineas Aereas, S.A.*, 21 Civ. 1758, 2021 WL 6621578, at *1 (S.D.N.Y. Apr. 23, 2021) ("[B]ecause service through the Hague Convention would unnecessarily delay this case, the Court finds that intervention is necessary."); *In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 266 (S.D.N.Y. 2012) ("Courts have frequently cited delays in service under the Hague Convention as supporting an order of alternative service under Rule 4(f)(3)."). Similarly, in *NBA*, the court held "[a] speedy method of service…was justified to ensure, among other reasons, that the funds gained by the allegedly infringing conduct would be recoverable." *NBA Props. v. P'ships & Unincorporated Ass'ns*, 549 F. Supp. 3d 790, 797 (N.D. Ill. 2021), citing *Strabala*, 318 F.R.D. at 114, quoting 4B FED. PRAC. & PROC. CIV. § 1134 (4th ed.).

### 2) <u>Service by Electronic Means is Not Prohibited by the Hague</u>

Fed. R. Civ. P. 4(f)(3) enables a court to grant an alternative method of service so long as it: "(1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *SEC v. Anticevic*, No. 05 CV 6991 (KMW), 2009 WL 361739, at *7 (S.D.N.Y. Feb. 8, 2009) citing Fed. R. Civ. P. 4(f)(3). Despite the Court's holding to the contrary in *Smart Study*, the alternative service requested by Plaintiff herein (i.e., service by electronic means), is not prohibited by any international agreement. As detailed further below, this has been confirmed by *Advanced Access Content Sys.*, 2018 U.S. Dist. LEXIS 169603. Moreover, while *Smart Study* suggests that the holding in *Water Splash, Inc. v. Menon,* 137 S. Ct. 1504, 1505 (2017) "indicated" that the only permissible methods of service are those "specified" in the Hague, many courts have opined that, "the Convention neither authorizes nor prohibits service by email—it is entirely silent on the issue." *NBA Props. v. P'ships & Unincorporated Ass'ns*, 549 F. Supp. 3d 790, 797 (N.D.

Ill. 2021) (citing *MacLean—Fogg Co. v. Ningbo Fastlink Equip. Co.*, No. 08 CV 2593, 2008 WL

5100414, at *2 (N.D. Ill. Dec. 1, 2008); *Sulzer Mixpac*, 312 F.R.D. at 331; *Ouyeinc Ltd. v. Alucy*,

No. 20 C 3490, 2021 WL 2633317, at *3 (N.D. Ill. June 25, 2021)).

### 3) China's Objection to Article 10(a) Does Not Constitute an Objection to Service by Email

Despite China's objection to service by postal channels under Article 10, China's

governing bodies (i.e. the National People's Congress and its Standing Committee) have not made

any interpretations regarding whether the reservation to Article 10(a) includes email and this

Court, along with many others, has held that such objection does not include service by email[23]

and further, that service by email is not prohibited by any international agreement.[24] *See, e.g.*

*Equipav S.A.*, 2022 U.S. Dist. LEXIS 124987, at *5 (finding that the Hague does not prohibit

service via e-mail despite the fact that Brazil has objected to Article 10 of the Hague regarding

service by mail); *ShelterZoom Corp. v. Goroshevsky*, 19-cv-10162 (AJN), 2020 WL 4252722, at

*2 (S.D.N.Y. July 23, 2020) ("[N]umerous courts have held that service by email does not violate

any international agreement, even when a country objects to Article 10 of the Hague

Convention[.]" (quotation marks and citation omitted)); *Grp. One Ltd. v. GTE GmbH*, 523 F. Supp.

3d 323, 343 (E.D.N.Y. 2021) ("Courts in the Second Circuit have generally found that email is not

a postal channel and that service by email is authorized if the signatory country has not explicitly

---

[23] U.S. Courts have also found that since China allows its own courts to "order service of Chinese process by email on defendants outside China, it cannot credibly object to U.S. courts ordering the same on defendants located in China". *See Hangzhou Chic Intelligent Tech. Co. v. P'ships & Unincorporated Ass'n Identified on Schedule A*, No. 20 C 4806, 2021 WL 1222783, at *11-12 (N.D. Ill. Apr. 1, 2021) ("Chinese law permits its courts to order service by email on a party outside of China, in part because email permits the person to be served to 'acknowledge' receipt." *See id.* at 8 (p. 47, Article 267) ("A people's court may serve procedural documents on a party without a domicile within the People's Republic of China in the following ways: . . . Service by . . . e-mail and any other means through which the receipt of the document may be acknowledged."); *see also Chanel, Inc. v. Handbagstore*, No. 20-CV-62121-RUIZ/STRAUSS, 2021 WL 3060329, at *25-30 (S.D. Fla. June 30, 2021); *see also Smart Study*, Dkt. 98 at ¶ 11.

[24] International law, not foreign law, is the relevant law for an analysis under Rule 4(f)(3). *See Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, 2017 WL 11509784, at *23 (S.D.N.Y. 2020) (noting that "Rule 4(f)(3) does not require a finding that the method of service ordered is permitted under foreign law.").

objected to service by electronic means.") (collecting cases); *Doe v. Hyassat*, 342 F.R.D. 53 (S.D.N.Y. 2022) ("Although Austria has objected to Article 10(a) of the Hague Service Convention — which permits service via 'postal channels' — such an objection does not extend to service via email.") (citing *F.T.C. v. Pecon Software Ltd.*, No. 12-cv-7186 (PAE), 2013 U.S. Dist. LEXIS 111375, at *5 (S.D.N.Y. Aug. 7, 2013) ("Numerous courts have held that service by email does not violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10." (citations omitted)); *Bandyopadhyay v. Defendant 1*, No. 22-cv-22907-BLOOM/Otazo-Reyes, 2022 U.S. Dist. LEXIS 212221 (S.D. Fla. Nov. 22, 2022) (noting that "[w]here a signatory nation has objected to the alternative means of service provided by the Hague Convention, that objection is expressly limited to those means and does not represent an objection to other forms of service, such as e-mail or website posting", and finding service via NFT and posting on a designated website was permissible on Chinese defendants); *see also, e.g. Sulzer*, 312 F.R.D. at 332; *Anova Applied Elecs., Inc. v. Hong King Grp., Ltd.*, 334 F.R.D. 465, 471 (D. Mass. 2020); *The Neck Hammock, Inc v. Danezen.com*, 2020 WL 6364598, at *4 (D. Utah Oct. 29, 2020); *Smart Study*, Dkt. 98. In *Luxottica Grp. S.p.A. v. P'ships, et al.*, 391 F. Supp. 3d 816 (N.D. Ill. 2019) the court disagreed with this Court's holding in *Sulzer*, finding China's objection to service via postal channels is an objection to service by email in reliance on *Water Splash*. Yet, on a motion for reconsideration, the *Luxottica* court conceded that the Supreme Court did not "conclusively settle the precise questions" because neither *Water Splash* nor *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694 (1988) involved Rule 4(f)(3) or e-mail service. *Luxottica Grp. S.p.A. v. P'ships, et al.*, 18 Civ. 2188, 2019 WL 2357011, at *3 (N.D. Ill. June 4, 2019); *see also In re Bibox Grp. Holdings Sec. Litig.*, No. 20cv2807(DLC), 2020 WL 4586819, at *5 (S.D.N.Y. Aug. 10, 2020) ("Service by email or social

media are not among those listed in Article 10. Courts have understood objections to the alternative channels of service in Article 10 to be limited to the methods specifically enumerated therein."); *see also Smart Study*, Dkt. 98.

Moreover, Plaintiff further respectfully submits that an analysis of Chinese law is irrelevant here for purposes of Rule 4(f)(3).  In *Advanced Access Content*, where the defendant argued that email service violated the laws of China, this Court held "[e]ven if true, the fact that email service does not comport with Chinese law or instructions from the Chinese government under the Hague Convention is inapposite to the Rule 4(f)(3) inquiry, which, requires only that service is not prohibited by international agreement."  2018 U.S. Dist. LEXIS 169603 at *13; *see also, Rio Props, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1014 (9th Cir. 2002) ("As obvious from its plain language, service under Rule 4(f)(3) must be (1) directed by the court; and (2) not prohibited by international agreement," and "no other limitations are evident from the text."); *see also Smart Study*, Dkt. 98 at ¶ 11.

### 2.  <u>Service by Electronic Means Comports with Due Process</u>

Service on Defendants by electronic means also comports with due process, as it is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 309 (1950); *see also Zanghi v. Ritella*, 2020 WL 589409, at *6 (S.D.N.Y. Feb. 5, 2020) (judicial approval of service via email is generally supported by facts indicating that the person to be served will likely receive the documents); *Pearson Educ. Inc. v. Doe 1*, 18-CV-7380, 2019 WL 6498305,  at *3 (S.D.N.Y. Dec. 2, 2019) ("Email service has also repeatedly been found by courts to meet the requirements of due process." (internal citation omitted).  This Court held the bar is met where, as here, Defendants engaged in online business and regularly communicated with customers via email. *Mattel, Inc. v. Animefunstore, et al.*, 18

Civ. 8824 (LAP) (Dkt. 81) (S.D.N.Y. May 1, 2020); *see also Sulzer*, 312 F.R.D. at 332 (service through email was appropriate where the "email address in question is listed prominently on [defendant's internet homepage…[,] [the defendant] presumably relies at least partially on contact through [its email] to conduct overseas business, and it is reasonable to expect [defendant] to learn of the suit against it through this email address."); *Kaneka Corp.*, 2017 WL 11509784 at *9 (email service appropriate where defendant conducted its business through email.").  Moreover, in *NBA*, the court held that "email was a more reliable method of service…because Defendant's email address was verified by the sales platform, while their physical addresses were not." *NBA Props.*, 549 F. Supp. 3d at 797; *see also Restoration Hardware, Inc.*, 2017 WL 11509784, at *23 (finding that in light of the evidence that the defendant was associated with certain electronic email accounts, due process was "easily satisfied"); *see also, Ouyeinc Ltd.*, 2021 WL 2633317, at *3 ("courts have routinely upheld service by email" in infringement actions where online stores' "business appeared to be conducted entirely through electronic communications").  Accordingly, Plaintiff respectfully submits that service by email under Rule 4 is the most effective means to ensure Defendants are reasonably apprised of this action.[25]

### 3.  Epstein Drangel's Prior Hague Service Attempts Support the Propriety of Alternative Service Under the Circumstances

Further, the propriety of alternative service is supported by Plaintiffs' counsel's experience

---

[25] To the extent the Court requires Plaintiff to attempt service on some or all Defendants via the Hague, Plaintiff respectfully submits it is entitled to an extension of any Temporary Restraining Order entered in this action until service on Defendants is completed.  Pursuant to Fed. R. Civ. P. 65(b)(2), a district court may extend a TRO "for good cause". Fed. R. Civ. P. 65(b)(2). *See e.g., Trs. of Columbia Univ. v. Encyclopaedia Iranica Found.*, 2020 U.S. Dist. LEXIS 155031, at *3 (S.D.N.Y. Aug. 26, 2020) (extending a TRO until after the submission of the parties' post-hearing briefs, because such time will allow the Court to consider the parties' submissions, and because the extension is supported by the reasons stated in the Court's decision granting the TRO) (citing *In re Criminal Contempt Proceedings Against Gerald Crawford, Michael Warren*, 329 F.3d 131, 136-39 (2d Cir. 2003) (holding that a TRO, extended for good cause pending resolution of preliminary injunction proceedings was a valid basis for appellants' contempt convictions).  Moreover, to the extent the Court requires Plaintiff to attempt service via the Hague, Plaintiff further proposes providing Defendants with notice of the lawsuit via e-mail prior to the completion of the Hague service.

in attempting to effect service via the Hague in cases similar to the instant one. More specifically, between February and May of 2023, Epstein Drangel began the process of serving a total of ninety-three (93) defendants across four (4) different cases through the Hague. (Nastasi Dec., ¶ 38). As of the date of this Application, service by the Chinese Central Authority has only been attempted on thirty-one (31) defendants across only two (2) of the four (4) cases, and only six (6) of those thirty-one (31) defendants were successfully served. *Id.* at ¶ 39. Epstein Drangel was told that the service failed for various reasons, including but not limited to that the addresses, which Epstein Drangel's Beijing office, through its diligence, confirmed as connected to the respective defendants, were in fact not occupied by or connected to the defendants, but rather, other unrelated persons or entities.[26] *Id.* at ¶ 40. Epstein Drangel's inability to successfully serve defendants via the Hague at addresses which it was confident were accurate and connected to defendants' respective merchant storefronts underscores that if Epstein Drangel continues to rely on counterfeiters' merchant storefront addresses, Hague service across cases similar to the present action will likely be largely unsuccessful. *Id.* at ¶ 41.

According to the Civil Procedure Law of the People's Republic of China, Part 1, Chapter 7, Section 2, Article 79[27], which governs service where the recipient refuses to accept the documents, for service under the Hague to be proper, the defendant to be served or, if service is refused by defendant, a proper representative must provide a signature, or a failure of service will

---

[26] By way of example, for one address, the individuals who reside at the address told the judges who were sent to effectuate service that they had no relationship with defendant's company, do not know any person from the company and further stated that they do not rent space to the defendant company. As another example, the legal representative of a company at another address refused to accept service.

[27] *See* Wei Luo, The Civil Procedure Law and Court Rules of the People's Republic of China 62 (2006) ("If the person on whom the litigation documents are to be served or the adult family member living with him refuses to receive the documents, the person serving the documents shall ask representatives from the relevant grass-roots organization or the unit to which the person on whom the documents are to be served belongs to appear on the scene, explain the situation to them and record on the receipt the reasons of the refusal and the date of it. After the person serving the documents and the witnesses have affixed their signatures or seals to the receipt, the documents shall be left at the place where the person on whom they are to be served lives and the service shall be deemed completed.").

result. *Samsung Elec. Co., Ltd. v. Early Bird Sav.*, No. 13 Civ. 3105 (BEN), 2014 U.S. Dist. LEXIS 141233 *6-7 (S.D. Cal., Oct. 1, 2014). Epstein Drangel's inability to successfully serve a defendant via the Hague at an address that it was confident was accurate and connected to the defendant's storefront shows that if Epstein Drangel continues to rely on counterfeiters' addresses listed on their websites or storefronts, Hague service across cases similar to this action has the potential to be largely unsuccessful. Thus, even where, as here, some Defendants' addresses may appear accurate, it is highly likely that service via the Hague could be unsuccessful. Further, the inability of the Central Authority to attempt to effectuate service for more than six (6) of ninety-three (93) defendants within nine (9) to twelve (12) months shows that if Plaintiffs attempt service via the Hague, it will take longer than the anticipated six (6) months and will be largely unsuccessful.

### E. DEFENDANTS ARE PROPERLY JOINED IN THIS ACTION PURSUANT TO FED. R. CIV. P. 20(A)(2)

Rule 20(a)(2) permits the joinder of multiple defendants in a single action if two criteria are met: (1) the claims "aris[e] out of the same transaction, occurrence, or series of transactions and occurrences"; and (b) "any questions of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2). What will constitute the same transaction or occurrence under the first prong of Rule 20(a) is approached on a case-by-case basis. *Kehr v. Yamaha Motor Corp.*, No. 09-CV-7379 (CM), 596 F. Supp. 2d 821, 826 (S.D.N.Y. 2008). Courts construe Rule 20(a) broadly "to enable the court to promote judicial economy by permitting all reasonably related claims for relief by or against different parties to be tried in a single proceeding." *Viada v. Osaka Health Spa, Inc.*, No. 04-CV-2744 (VM)(KNF), 235 F.R.D. 55, 61 (S.D.N.Y. 2006) (citing *A.I.A. Holdings, S.A. v. Lehman Bros.*, No. 97-CV-4978 (LMM), 1998 U.S. Dist. LEXIS 4175, at *19 (S.D.N.Y. April 1, 1998)).

Here, Plaintiff respectfully submits that its claims against the Defendants arise out of the

same series of transactions and occurrences. Namely, Defendants each infringed Plaintiff's Off-White Marks in their Counterfeit Products offered for sale and/or sold on Amazon. (Nastasi Dec., ¶ 14). Further, in Epstein Drangel's experience, many of the Defendants may be related and/or share a common owner. *Id*. at ¶¶ 19-21. Moreover, Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods offered and of the Counterfeit Products themselves offered for sale and through visual inspection of the evidence collected by Epstein Drangel which shows that some of the Defendants use the same or similar images for their Infringing Listings. *Id*. at ¶ 19.

As this Court has found in nearly identical cases, joinder is appropriate in cases involving the sale of counterfeit products (infringing and/or counterfeiting the same intellectual property) on e-commerce platforms by multiple China-based defendants in the interest of judicial economy and where plaintiff has established a strong likelihood that many of the defendants have engaged in coordinated actions or share ownership.[28] *Id*. at ¶¶ 19-21; *see Golden Goose Deluxe Brand v. Aierbushe et al.*, No. 19-cv-2518 (VEC), 2019 U.S. Dist. LEXIS 84639, at *1 (S.D.N.Y. May 3, 2019); *WowWee Grp. Ltd., et al. v. Meirly, et al.,* No. 18-cv-706 (AJN), 2019 U.S. Dist. LEXIS 51905, at *14 (S.D.N.Y. Mar. 27, 2019).[29] Accordingly, Plaintiff respectfully submits that Defendants are properly joined in this action pursuant to Fed. R. Civ. P. 20(a)(2).

## F.  PLAINTIFF IS ENTITLED TO AN ORDER AUTHORIZING EXPEDITED DISCOVERY

Additionally, Plaintiff respectfully requests that the Court order expedited discovery from Defendants, Financial Institutions and Third Party Service Providers regarding the scope and

---

[28] Here, Defendants' Merchant Storefronts share unique identifiers, such as design elements along with similarities in price, description of the goods and of the Counterfeit Products themselves offered for sale. (Nastasi Dec., ¶ 19). Through visual inspection of the evidence collected by Epstein Drangel, some of the Defendants use the same or similar images for their Infringing Listings. *Id*. at ¶ 21, Ex. C. Further, in Epstein Drangel's experience, many of the Defendants may be related and/or share a common owner. *Id*. at ¶ 19.

[29] Plaintiffs will promptly provide supplemental briefing should the Court request it.

extent of Defendants' counterfeiting and infringing activities, as well as Defendants' account details and other information relating to Defendants' Financial Accounts, Assets and/or any and all User Accounts and or Financial Accounts with the Third Party Service Providers, including, without limitation any and all websites, any and all User Accounts and any and all Merchant Storefronts, including, without limitation, those owned and operated, directly or indirectly, by the Third Party Service Providers and the Financial Institutions.

Generally, a party may not seek discovery prior to a Rule 26(f) conference unless authorized by a court order. Fed. R. Civ. P. 26(d)(1). In the past, Courts in this District have often applied a four-factor test to determine when expedited discovery may be granted,[30] but now apply a more flexible "good cause" test to examine "the discovery request . . . on the entirety of the record to date and the *reasonableness* of the request in light of all the surrounding circumstances." *Ayyash v. Bank Al-Madina*, 233 F.R.D. 325, 326 (S.D.N.Y. 2005) (internal citation omitted). Regardless of which test, Plaintiff has established that it is entitled to the expedited discovery requested for good cause shown. *See id*. at 327.

## G. PLAINTIFF'S REQUEST FOR A SECURITY BOND IN THE AMOUNT OF $5,000 IS ADEQUATE

In determining the amount of the bond that a moving party must post, this Court is "vested with wide discretion." *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996). Plaintiff respectfully submits the provision of security in the amount of $5,000 is sufficient. *Rovio Entertainment Ltd. and Rovio Animation OY v. Best Baby and Kid Store, et al.*, No. 17-cv-4884-KPF (S.D.N.Y. June 28, 2017).[31]

---

[30] *See Advanced Portfolio Techs., Inc. v. Advanced Portfolio Techs., Ltd.*, No. 94 Civ. 5620 (JFK), 1994 U.S. Dist. LEXIS 18457, at *7 (S.D.N.Y. Dec. 28, 1994).

[31] Moreover, this Court has gone as far as to hold that no security bond is necessary in similar circumstances. *See Mattel, Inc. v. 86755, et al.*, No. 18-cv-8825-RJS-JSR (S.D.N.Y. Oct. 4, 2018) (The Hon. Richard J. Sullivan held that no security bond was necessary because "it strikes me almost as fairly arbitrary.")

## IV.    <u>CONCLUSION</u>

For the reasons set forth above, Plaintiff respectfully requests that its Application be granted

*ex parte* in its entirety.

Dated:  February 9, 2024                              Respectfully submitted,

                                                     EPSTEIN DRANGEL LLP


                                             BY:    _____
                                                     Gabriela N. Nastasi
                                                     gnastasi@ipcounselors.com
                                                     Jason M. Drangel (JD 7204)
                                                     jdrangel@ipcounselors.com
                                                     Ashly E. Sands (AS 7715)
                                                     asands@ipcounselors.com
                                                     Danielle S. Futterman (DY 4228)
                                                     dfutterman@ipcounselors.com
                                                     60 East 42nd Street, Suite 1250
                                                     New York, NY 10165
                                                     Telephone:    (212) 292-5390
                                                     Facsimile:    (212) 292-5391
                                                     *Attorneys for Plaintiff*
                                                     *Off-White LLC*